[No. 27797-9-I. Division One. May 2, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL L. BEDKER, JR., *Appellant*.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

GROSSE, J. — Daniel L. Bedker, Jr., appeals his conviction and exceptional sentence on one count of first degree statutory rape and one count of first degree rape of a child for incidents involving his younger half brother. Bedker claims on appeal that (1) the child victim's prior consistent statements were cumulative and unduly prejudicial, and (2) the reasons for imposing an exceptional sentence are not supported by the record and are not sufficiently substantial and compelling as a matter of law. We affirm.

Daniel Bedker was convicted of first degree statutory rape and first degree rape of a child. Both were committed against M, Bedker's half brother, at a time when M was between the ages of 4 and 7. M told his mother that "Danny" (Bedker) had done the same thing that D had done. (D was a 13-year-old boy who had been convicted of having anal intercourse with M in 1987.) An investigation ensued. M was interviewed by doctors and counselors and repeated his story to them.

A pretrial hearing was held on the admissibility of M's statements. The defense did not object to the original disclosures to a doctor. Over objection, the court admitted the statements that M made to an interviewer at the sexual assault center. The trial court excluded as cumulative some of the statements made by M.

Trial was held with the victim and others testifying. Bedker was found guilty of both counts. The presentence report set out three prior criminal convictions: (1) simple assault, (2) two counts of third degree statutory rape, and (3) third degree malicious mischief. To prove the facts underlying the simple assault conviction, the State offered the original information charging statutory rape, the amended information reducing the charge, the Defendant's *Alford* plea statement, the judgment and sentence, and the police reports. The trial court declined to consider any of these documents except the *Alford* plea statement and the resulting judgment and sentence. The plea statement set forth Bedker's belief that he would be convicted of indecent liberties if the case went to trial. The judgment and sentence required the Defendant to participate in sexual deviancy treatment and ordered him to stay away from the victim and anyone under the age of 18.

A stepbrother of Bedker, who lived with Bedker and his family some 12 years earlier, testified that Bedker once sexually assaulted him in the bathroom of the family trailer. In addition, this witness saw the Defendant have sexual intercourse with animals and kill a dog. Bedker's former stepmother, M's mother, also testified as to the above events, or at least as to what she knew about them. Bedker took the stand at the sentencing hearing and denied having sex with animals, but admitted to killing a stray dog.

To establish Bedker's future dangerousness the State submitted an evaluation from Dr. Wolfe, an acknowledged sexual deviancy treatment specialist. The evaluation was based on a review of the various reports and victim statements from the current offense as well as the previous convictions. Included in the previous materials was a 1983 statement from a sexual

deviancy counselor who indicated that he was unable to treat Bedker, and that Bedker did not complete treatment. Bedker was sent to this counselor as a result of his 1983 simple assault conviction. Defense counsel objected to all of the facts contained in these reports and to the introduction of any conclusions based upon those facts. As a result of his review of all the documents, Dr. Wolfe first opined that Bedker was not amenable to treatment and that he presented an extreme risk to reoffend. Further, it was Dr. Wolfe's opinion that Bedker presented a high risk of reoffense in violent and sexually deviant ways if he were at large in the community.

The standard range for the conviction of statutory rape was 51 to 68 months and for the conviction of rape of a child was 72 to 96 months. The sentencing court imposed an exceptional sentence of 180 months' confinement on each count to be served concurrently. The judgment and sentence set out reasons for the exceptional sentence including: victim vulnerability, abuse of trust, pattern of sexual abuse, lack of amenability to treatment (future dangerousness), and a lack of remorse.

### Admissibility of Child Hearsay Statements

Bedker alleges there is no legitimate purpose in allowing adults to repeat the prior consistent statements of a child witness which allege sexual misconduct. Although Bedker concedes that M's statements fall within the child hearsay exception, RCW 9A.44.120, he argues the statements are inadmissible because they merely served to bolster the child's testimony, and as such were cumulative and unduly prejudicial.

■ RCW 9A.44.120 specifically allows the admission of child hearsay under these circumstances. The purpose of the child hearsay statute was set forth by our State Supreme Court in *State v. Jones*, 112 Wn.2d 488, 493-94, 772 P.2d 496 (1989):

> RCW 9A.44.120 is principally directed at alleviating the difficult problems of proof that often frustrate prosecutions for child sexual abuse. Acts of abuse generally occur in private and in many cases leave no physical evidence. Thus, prosecu-

tors must rely on the testimony of the child victim to make their cases. Children are often ineffective witnesses, however. Feeling intimidated and confused by courtroom processes, embarrassed at having to describe sexual matters, and uncomfortable in their role as accuser of a defendant who may be a parent, other relative or friend, children often are unable or unwilling to recount the abuses committed on them. In addition, children's memories of abuse may have dimmed with the passage of time. For these reasons, the admissibility of statements children make outside the courtroom, and especially statements made close in time to the acts of abuse they describe, is crucial to the successful prosecution of many child sex offenses.

*See also Joint Hearings on SB 4461 before the Washington State Senate Judiciary Comm. and Washington State House Ethics, Law and Justice Comm.*, 47th Legislature (Jan. 28, 1982).

Admissibility under the statute is not based on mere repetition, it is based on repetition under circumstances indicating the reliability of the statements. *See State v. Ryan*, 103 Wn.2d 165, 174, 691 P.2d 197 (1984).

■ Though evidence may be admissible under the child hearsay statute, the inquiry does not stop there. These statements, like any other evidence, are subject to analysis under ER 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The decision to limit the testimony lies within the discretion of the trial court. *State v. Weiss*, 73 Wn.2d 372, 378, 438 P.2d 610 (1968).[1]

Here, the trial court carefully exercised its discretion in deciding which statements would be admitted and which would be excluded. The child hearsay statements admitted over objection were made in the interview at the sexual

---

[1]This analysis is consistent with that of the Florida Supreme Court in *Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992). There, the court held that under Florida's child hearsay statute, which is similar to ours, if reliable, a child victim's hearsay statement is not excluded per se as hearsay or as a prior consistent statement, even though the child testifies fully at trial. *Pardo*, 596 So. 2d at 667.

assault center. The interview and the testimony regarding it encompassed areas not covered in the initial disclosure or in the victim's own testimony. The trial court did not abuse its discretion in admitting the statements.

## EXCEPTIONAL SENTENCE

Bedker next claims the trial court's reasons for an exceptional sentence are neither supported by the record nor sufficiently substantial and compelling as a matter of law. We apply the usual standard of review. *See* RCW 9.94A.210(4); *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991); *State v. Post*, 118 Wn.2d 596, 614, 826 P.2d 172, 837 P.2d 599 (1992) (citing *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990)).

The findings of fact challenged here are: (1) the victim's vulnerability, both in age and because of a prior sexual assault; (2) an abuse of a position of trust; (3) future dangerousness; and (4) lack of remorse.

### Victim Vulnerability

When analyzing particular vulnerability, the focus is on the victim. The court determines if the victim is more vulnerable to the offense than other victims and if the defendant knew of that vulnerability. *State v. Vermillion*, 66 Wn. App. 332, 348-49, 832 P.2d 95 (1992), *review denied*, 120 Wn.2d 1030 (1993). *See also State v. Jones*, 59 Wn. App. 744, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991). In *State v. Fisher*, 108 Wn.2d 419, 423-25, 739 P.2d 683 (1987), the court held that a 5¹/₂-year-old victim could be considered particularly vulnerable due to his age even though the victim's age was an element of the crime. In this case, the trial court found, as to count 1, the victim was vulnerable due to his youth. Then as to both counts 1 and 2 the court found M particularly vulnerable because he had previously been a victim of sexual abuse, a fact known to Bedker.

At the time of the offense charged in count 1, the victim was 4 to 5 years old. This is sufficient to establish vulnerability. *See Fisher*. Contrary to Bedker's claim, the vulnerabil-

ity due to M's age was set forth by the sentencing court at sentencing.

Here, evidence was presented that Bedker knew of M's previous victimization. Additionally, the psychologist's report indicated a significant impact on M resulting from this second incident of abuse. The trial court did not err in finding particular vulnerability.

Abuse of Position of Trust

Use of a position of trust, confidence, or fiduciary responsibility to facilitate the crime is an aggravating factor. RCW 9.94A.390(2)(c)(iv). *See State v. Grewe, supra; State v. Harp*, 43 Wn. App. 340, 343, 717 P.2d 282 (1986).

■ When analyzing abuse of trust, the focus is on the defendant. The inquiry is whether the defendant was in a position of trust, and further whether this position of trust was used to facilitate the commission of the offense. Whether the defendant is in a position of trust depends on the length of the relationship with the victim, *see State v. Fisher, supra*; the trust relationship between the primary care giver and the perpetrator of a sexual offense against a child, *see State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), *review denied*, 114 Wn.2d 1014 (1990); the vulnerability of the victim to trust because of age, *see State v. Grewe*, 117 Wn.2d at 216-17; and the degree of the defendant's culpability, *see State v. Creekmore*, 55 Wn. App. 852, 863, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990).

■ The trial court found that the Defendant took advantage of a position of trust because he was an adult member of the victim's family. The fact that M is Bedker's half brother is not in dispute. Bedker claims there was not a significant relationship, no trust relationship, built up between M and him. Bedker attempts to analogize his situation to *State v. Stuhr*, 58 Wn. App. 660, 794 P.2d 1297 (1990) (tenuous relationship between victim and house guest), *review denied*, 116 Wn.2d 1005 (1991). Here, there was a family relationship between the victim and the predator. The crimes occurred at the home of M and Bedker's father.

Bedker is M's half brother, someone the victim should have been able to trust. The trial court did not err in finding an abuse of trust.

## Future Dangerousness

■ Future dangerousness is a nonstatutory aggravating factor that may justify the imposition of an exceptional sentence for sexual offenses. *State v. Barnes*, 117 Wn.2d 701, 711, 818 P.2d 1088 (1991); *see State v. Pryor*, 115 Wn.2d 445, 454, 799 P.2d 244 (1990). A future dangerousness aggravating factor applies only to sexual offenses, and it applies to sexual offenses only if the defendant (1) has a history of similar criminal acts, and (2) is not likely to be amenable to treatment. *State v. Strauss*, 119 Wn.2d 401, 414, 832 P.2d 78 (1992); *Post*, 118 Wn.2d at 615; *see State v. Pryor, supra.*

The trial court relied on four "similar acts" to find the necessary history. Those were: (1) the 1983 simple assault conviction, which was originally a statutory rape charge; (2) convictions for two counts of third degree statutory rape; (3) a sexual assault on a stepbrother, some 12 years before the sentencing; and (4) the sodomy of farm animals.

The convictions listed in (2) are not seriously challenged and alone give a good indication of the necessary history. However, Bedker does challenge the trial court's "going behind" the 1983 simple assault conviction, the assault on the stepbrother, and the sodomy with farm animals, as part of the Defendant's history. He claims the trial court erred in relying on these uncharged crimes to find that he had a history of similar offenses, and by doing so the trial court violated the "real facts" doctrine. RCW 9.94A.370(2).

■ Under the real facts doctrine, "[f]acts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(c), (d), and (e)."[2] RCW 9.94A.370(2). Our

---

[2]We note that the current version of RCW 9.94A.390(2)(e) refers to "offense[s] [which] include a finding of sexual motivation". However, both parties here agree that the exception to the real facts doctrine referred to in RCW 9.94A.370(2) does not refer to the current version of subsection (e). Prior to 1990, subsection (e) referred to offenses which were part of an ongoing pattern of sexual abuse. *See*

Supreme Court has stated that "[d]efendants will be held accountable for what they have been convicted of, but not for crimes that the prosecution either could not or chose not to prove." (Italics omitted.) *State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987) (quoting David Boerner, *Sentencing in Washington* § 9.16, at 9-49 to 9-50 (1985)). Accordingly, courts have applied the real facts doctrine to reject unproven or uncharged crimes as a reason for imposing an exceptional sentence. *See, e.g., Barnes*, 117 Wn.2d at 707; *State v. Tunell*, 51 Wn. App. 274, 279, 753 P.2d 543, *review denied*, 110 Wn.2d 1036 (1988).

The statute does not prohibit the use of prior offenses to establish future dangerousness. Bedker's uncharged sexual offenses did not serve as reasons for imposing the exceptional sentence, but rather served as an objective basis for establishing his "history of similar conduct" to determine whether the *Pryor* standard for demonstrating future dangerousness is satisfied. The purpose of the *Pryor* test is "to require some form of objective verification of a defendant's future dangerousness". *State v. Miller*, 60 Wn. App. 914, 919, 808 P.2d 186 (1991). Our Supreme Court has stated:

> In sexual offense cases, it may be possible to discuss amenability to treatment in terms of "similar criminal acts" without looking at prior convictions. *See State v. Pryor*, 115 Wn.2d 445, 451-55, 799 P.2d 244 (1990), and cases discussed therein (concerning "similar acts of sexual deviancy").

*Barnes*, 117 Wn.2d at 708. Hence, the real facts doctrine was not violated here.

The court found the history of similar conduct necessary under *Pryor* by looking to Bedker's past acts as providing an

---

former RCW 9.94A.390(2)(e). Such offenses were excluded from the real facts doctrine. *See, e.g., State v. Creekmore*, 55 Wn. App. at 861. In 1990, the sexual motivation subsection was added to the list of aggravating factors in RCW 9.94A.390(2) and labeled (e), and the sexual abuse subsection (e) was changed to subsection (f). Laws of 1990, ch. 3, § 603, p. 67. However, the Legislature did not make the parallel adjustment in the list of exceptions to the real facts doctrine in RCW 9.94A.370(2). Notwithstanding this "scrivener's error", courts continue to read RCW 9.94A.370(2)(e) as excluding offenses involving an ongoing pattern of abuse from the real facts doctrine. *See State v. Overvold*, 64 Wn. App. 440, 444-46, 825 P.2d 729 (1992).

objective basis for the court's establishing the requisite history. The trial court attempted to say this very thing by indicating it was not considering the "criminality" of Bedker's acts, but that it would use the evidence as proof of "characteristics". These uncharged crimes were not used as offender score points to increase the standard range of punishment, but merely to find the history of similar acts requisite under *Pryor* to assist in establishing future dangerousness. The trial court did not err in finding that Bedker had a history of similar acts, thus satisfying the first prong of *Pryor*.

Bedker also challenges the second prong of *Pryor*, that there be an opinion from a mental health professional that the Defendant would not be amenable to treatment. *Pryor*, 115 Wn.2d at 455.

The State provided the sentencing court with a report from an expert in the treatment of sexual deviancy. The Defendant did not challenge the expert qualifications of Dr. Wolfe. Bedker refused to cooperate with a psychological exam, so the State took its documentary evidence of Bedker's criminal history and other statements to Dr. Wolfe. From these documents, Dr. Wolfe concluded that the prognosis for treatment was "poor under the most generous of descriptions". Further, Dr. Wolfe asserted that the Defendant "presents an extremely high risk for reoffense in violent and/or sexually deviant ways if he is at large in the community".

On the advice of counsel, Bedker did not submit to an examination by Dr. Wolfe and refused to participate in any evaluation. Bedker now claims that because he did not talk to Dr. Wolfe in person, the evaluation provided to the court is insufficient. We disagree. If Bedker's claim is correct, then future dangerousness could only be considered at the whim of defendants who agree to an evaluation. This is obviously not the rule of *Pryor*. The finding of a lack of amenability to treatment must be based on the expert testimony of a mental health professional. *In re Vandervlugt*, 120 Wn.2d 427, 433, 842 P.2d 950 (1992); *Pryor*, 115 Wn.2d at 454-55; *Strauss*, 119 Wn.2d at 421. Any defendant, by not personally

participating in a psychological exam, takes his or her chances that the State will have a sufficient record to present to an expert for analysis.

Bedker argues that the trial court's actions in finding a lack of amenability to treatment follow from his refusal to participate in the mental health evaluation and thus punish him more severely than would otherwise occur because of his assertion of his Fifth and Sixth Amendment rights. First, the record does not establish this factual assertion. The trial court's actions did not follow from the assertion of any constitutional right, but from the record. Second, if there is an adequate record we need not reach the constitutional issues. Third, there is an adequate record here. The recent decision of our Supreme Court in *State v. McNallie*, 123 Wn.2d 585, 870 P.2d 295 (1994) is dispositive.

As to the second issue:

> McNallie contends that the basis for the trial court's non-amenability finding was the Twin Rivers evaluation, and that the conclusion contained there was solely based on his refusal to admit guilt and abandon his appeal. He asserts that an exceptional sentence based upon this refusal would violate the Fifth Amendment, as applied to the states through the Fourteenth Amendment, which provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself". U.S. Const. amend. 5. *See Malloy v. Hogan*, 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964). However, "[a] reviewing court should not pass on constitutional matters unless absolutely necessary to its determination of the case". *State v. Ng*, 110 Wn.2d 32, 36-37, 750 P.2d 632 (1988). After examining the record, we find that the trial court's initial imposition of the exceptional sentence, based on McNallie's previous failed attempts at treatment, was correct. Therefore, there is no need to consider the constitutional issues.

*McNallie*, 123 Wn.2d at 589-90.

As to the first and third issues:

> We did not intend our decision in *Pryor* to limit the discretion of trial courts to consider a defendant's previous treatment history in determining future dangerousness. The Court of Appeals cases upon which we constructed our future dangerousness requirements in *Pryor* make this clear. For instance, that court had upheld findings of future dangerousness based in part on the defendant's failure to complete or follow through

on treatment. *In re George,* 52 Wn. App. 135, 147-48, 758 P.2d 13 (1988); *State v. Shephard,* 53 Wn. App. 194, 201-02, 766 P.2d 467 (1988). Similarly, the use of a prior determination of non-amenability has been found adequate to support a current exceptional sentence. *State v. Wood,* 42 Wn. App. 78, 82, 709 P.2d 1209 (1985), *review denied,* 105 Wn.2d 1010 (1986). Our decision in *Pryor* grew out of cases such as these, and was intended to substantiate their reasoning.

*McNallie,* 123 Wn.2d at 590-91.

There is an adequate record here from which a mental health expert could opine as to Bedker's amenability, or lack thereof, to treatment. The purpose of the *Pryor* requirement is to ensure that defendants whose future dangerousness can be minimized or eliminated by treatment available in the community receive treatment rather than an exceptionally long prison sentence. *See Miller,* 60 Wn. App. at 919. There is no indication that treatment is available in the community or that Bedker is amenable to treatment to eliminate his behavioral problems.

Both prongs of *Pryor* are present in this case and the sentencing court did not err in finding that Bedker constituted a danger to continue his pattern of sexual abuse in the future.

### Lack of Remorse

To justify an exceptional sentence on the ground of lack of remorse, the lack of remorse must be of an aggravated or egregious nature. *State v. Ross,* 71 Wn. App. 556, 563, 861 P.2d 473 (1993). Here, the State concedes the trial court's finding fails to identify any egregious lack of remorse. Accordingly, this factor has not been established and the trial court erred in so concluding.

### Remand or Affirmance

When an exceptional sentence is based on both proper and improper grounds, an appellate court must remand the case for resentencing unless it is satisfied that the trial court would have imposed the same sentence absent consideration of the improper grounds. *State v. Drummer,* 54 Wn. App. 751, 760, 775 P.2d 981 (1989). Here, the only ground that is not

supported is a lack of remorse. Considering the overwhelming evidence of Bedker's future dangerousness, the vulnerability of the victim, and the violation of a position of trust, the court is satisfied that the trial court would impose the same sentence absent consideration of the lack of remorse.

## Clearly Excessive Sentence

 Bedker argues the sentence is clearly excessive. This question is reviewed under an "abuse of discretion" standard. This standard of review and its application to the issue are a principal subject of discussion in our recent decision in *State v. Ross*, 71 Wn. App. at 568-73. As we explained in *Ross*:

> A careful examination of each of the words used to explain the abuse of discretion standard demonstrates why the pattern in the vast majority of cases cited above has developed. In order to abuse its discretion in determining the length of an exceptional sentence above the standard range, the trial court must do one of two things: rely on an impermissible reason (the "untenable grounds/untenable reasons" prong of the standard) or impose a sentence which is so long that, in light of the record, it shocks the conscience of the reviewing court (the "no reasonable person" prong of the standard). Indeed, once a reviewing court has determined that the facts support the reasons given for exceeding the range and that those reasons are substantial and compelling, there is often nothing more to say. The trial and appellate courts simply reiterate those reasons to explain why a particular number of months is appropriate. This is what our courts refer to when they recite that the length of the sentence must have "some basis in the record". *See, e.g.*, [*State v.*] *Brown*, [60 Wn. App. 60, 77, 802 P.2d 803 (1990), *review denied*, 116 Wn.2d 1025 (1991)]; *State v. Sanchez*, 69 Wn. App. 195, 208, 848 P.2d 735, *review denied*, 121 Wn.2d 1031 (1993).
>
> The Sentencing Guidelines Commission and our courts have recognized that the Legislature chose to severely limit review of the length of exceptional sentences. "[A]ny sentence outside the standard range shall be subject to review *only* for abuse of discretion. . . . Washington Sentencing Guidelines Comm'n, *Report to the Legislature* 51 (Jan. 1983)." (Italics omitted.) [*State v.*] *Oxborrow*, [106 Wn.2d 525, 530-31, 723 P.2d 1123 (1986)]. In our view, *State v. Creekmore*, 55 Wn. App. 852, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990) correctly analyzed the impact of the abuse of discretion standard in these cases.
>
> Stated otherwise, the "clearly excessive" prong of appellate review under the sentencing reform act gives courts near plenary discretion *to affirm* the length of an exceptional sentence, just as the trial court has all but unbridled discretion in

setting the length of the sentence. This necessarily follows from the lack of a legislative definition of "clearly excessive" and from the abuse-of-discretion standard of review. *See* RCW 9.94A.210(4)(b); *State v. Oxborrow*, 106 Wn.2d 525, 529-30, 723 P.2d 1123 (1986).

55 Wn. App. at 864. We hold that the sentencing court need not state reasons in addition to those relied upon to justify the imposition of an exceptional sentence above the standard range in the first instance to justify the length of the sentence imposed.

(Footnotes omitted.) *State v. Ross*, 71 Wn. App. at 571-73.

Here an exceptional sentence of 180 months, less than twice the standard range on count 2, cannot be said to be untenable.

The decision of the trial court is affirmed.

PEKELIS, A.C.J., and COLEMAN, J., concur.

Review denied at 125 Wn. 2d 1004 (1994).