# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74030-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RONALD PARKER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 15, 2017 |

2017 MAY 15 AM 10: 51
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

SPEARMAN, J. — Ronald Parker's eight year old stepdaughter accused him of molesting her. A jury convicted Parker of four counts of first degree child rape, three counts of first degree child molestation, and one count of attempted first degree child molestation. On appeal, he claims he was denied an impartial jury, that the trial court erred in its ruling on the admissibility of certain evidence, that the prosecutor engaged in misconduct and that legal financial obligations were improperly imposed at sentencing. Additionally, in a statement of additional grounds, Parker alleges a number of other errors. Because none of the claims have merit, we find no error and affirm.

## FACTS

Ronald Parker and Shannon Dearinger lived in Rockport, Washington with four of Dearinger's children: Adam MacCurdy (age 19), R.M. (daughter, age 13), J.M. (son, age 11), and the alleged victim A.M. (daughter, age 8). Dearinger and

her children had moved from nearby Sedro-Wooley to live with Parker in September 2012. The blended family experienced discord. Parker would yell at the children for not doing chores. After he had a physical confrontation with J.M., Dearinger and her children moved out for several weeks in December 2013.

R.M. was particularly unhappy living with Parker. She wrote in her journal that she hated Parker and wanted to move back to Sedro-Wooley. She wrote of ways to induce her mother to leave Parker, such as telling her mother lies that would break them up.

In June 2013, A.M. told R.M. that Parker touched her inappropriately. R.M. and J.M. encouraged A.M. to tell Dearinger. A.M. told her mother that Parker had touched her and tried to press his finger in her. Dearinger and her children gathered their belongings and left the house. Dearinger reported the molestation to police. Soon after, a child interview specialist conducted a video recorded interview with A.M. about her allegations. Parker was charged with four counts of rape of a child in the first degree and four counts of child molestation in the first degree.

At trial A.M. testified that Parker touched her "boobies" and "crotch" under her clothing. Verbatim Report of Proceedings (VRP) (8/11/15) at 72-73. She testified that Parker pushed hard on her crotch with his finger, and that it hurt each time he did this. She also described Parker trying to get her to touch his genitals. She said that Parker touched her while they laid next to each other on the couch watching TV, covered by a blanket. When the incidents occurred, other family members were sitting on couches or the floor. Dearinger, J.M., and R.M.

2

testified that the family watched TV together at least once a week. They also confirmed that when the family watched TV together, Parker and A.M. laid on the couch together covered by a blanket. A.M.'s testimony was largely consistent with her recorded interview that was admitted and shown to the jury.

Parker was convicted of four counts of first degree rape of a child, three counts of first degree child molestation, and one count of attempted child molestation. He appeals the convictions.

DISCUSSION

## Juror Statements in Voir Dire

Parker argues that he was denied his constitutional right to a fair and impartial jury. He contends that the jury was biased when two prospective jurors discussed their experience with child sexual assault victims.

During voir dire, juror 22 and Parker's counsel discussed juror impartiality. Juror 22 revealed that "[m]y wife was molested. My brother-in-law is in jail for being a molester, and I work for DSHS children's administration." VRP (8/10/15) at 55. Juror 22 said he could not be a fair juror. Parker's counsel asked if anybody else felt that way. Juror 27 said,

> I work in an elementary school, and have been a mandatory reporter for years. For all the time I've worked with kids, and had a niece about six years ago that went through a very, very similar trial, very similar counts read. . . . But I think that my previous experience would, dealing with kids, that I just have a feeling kids don't lie in that situation. It's too extreme. And it's not that I assume the defendant is guilty; it's that I assume the child is telling the truth.

VRP (8/10/15) at 55. Defense counsel continued to question the juror, who reiterated her perspective. Juror 27 repeated four times that she might be biased.

3

The State moved to excuse Juror 22 for cause without objection by defense. Defense did not seek to excuse Juror 27, but she was not among the jurors chosen to decide the case.

Generally, we do not consider arguments raised for the first time on appeal. RAP 2.5(a). But a defendant may appeal a manifest error affecting a constitutional right even if the issue was not raised before the trial court. RAP 2.5(a)(3). The defendant must identify a constitutional error and show that it resulted in actual prejudice, which means that it had practical and identifiable consequences in the proceeding. State v. Roberts, 142 Wn.2d 471, 500, 14 P.3d 713 (2000). "'[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.'" State v. Lamar, 180 Wn.2d 576, 583, 327 P.3d 46 (2014) (quoting State v. O'Hara, 167 Wn.2d 91, 100, 217 P.3d 756 (2009)). "'If the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim, the alleged error is not manifest.'" Id. at 583 (quoting State v. Davis, 175 Wn.2d 287, 344, 290 P.3d 43 (2012)).

Parker meets the first part of the RAP 2.5(a)(3) analysis because his claimed error implicates the constitutional guarantee to a trial by impartial jury. But he fails to satisfy the second part because the error is not manifest from the record. Jurors 22 and 27 simply expressed a concern that based on their experience, they could not be unbiased jurors. Juror 27's statements had the most potential to influence the venire because of the length of questioning,

4

repetition of statements, and experienced based opinion on the credibility of child victims. But this was apparently not obvious to Parker's counsel. He questioned this juror at some length as she repeatedly expressed her opinion, and did not move to excuse her for cause. Because the trial court could not have foreseen the alleged error, it is not manifest. We decline to review this issue under RAP 2.5(a)(3).

Admission of Recorded Interview

Parker argues that the trial court erred by admitting A.M.'s recorded interview. He contends that the recording should have been excluded because it was cumulative and unfairly prejudicial.

We review a trial court's decision to admit evidence for abuse of discretion. State v. Magers, 164 Wn.2d 174, 189 P.3d 126 (2008). Child hearsay statements about sexual contact are admissible if the child is available to testify. RCW 9A.44.120. The statements are nonetheless subject to analysis under ER 403, which permits exclusion of evidence if the "probative value is substantially outweighed by the danger of unfair prejudice ... or needless presentation of cumulative evidence." ER 403; State v. Bedker, 74 Wn. App. 87, 93, 871 P.2d 673 (1994). A recorded interview with a child sexual assault victim is not cumulative if it gives new or additional information that is not presented in other evidence, including a view of the victim's demeanor and voice inflections. Bedker, 74 Wn. App at 94; State v. Dunn, 125 Wn. App. 582, 588-89, 105 P.3d 1022 (2005).

Here, the trial court conducted a child hearsay hearing before trial, and found the recording admissible under RCW 9A.44.120. At trial, Parker objected that the interview was cumulative. The trial court did not consider the objection, deferring to the finding at the child hearsay hearing that the recording was admissible. But even if child hearsay statements are admissible under RCW 9A.44.120, the statements are still subject to other rules of evidence. Bedker, 74 Wn. App at 93. Thus, the trial court's refusal to consider the objection was an abuse of discretion. The error was harmless, however, because the objection was not well founded. The recording was not cumulative because during the interview, A.M. showed a range of demeanor and provided new information. It contained more details about distinct incidents of molestation, whereas A.M.'s testimony discussed the molestation more generally.

Parker additionally argues that the recording was unfairly prejudicial because it showed A.M. in a "more relaxed, 'child friendly' setting than the courtroom," which he contends bolstered her testimony. Brief of Appellant at 12. But other than this bald assertion, Parker fails to explain how an interview conducted in such a setting bolstered A.M.'s credibility or unfairly prejudiced him. Accordingly, we reject the argument. The trial court did not err by admitting the recording of A.M.'s interview.

Exclusion of R.M.'s Journal

Parker argues that the trial court erroneously excluded R.M.'s journal, in which she outlined a plan to convince her mother to leave Parker. The trial court refused to admit the journal in its entirety, but permitted Parker to cross examine

6

R.M. about the journal and to display portions of it to the jury. Parker contends that because the entire journal showed the states of mind of R.M. and A.M., it was admissible under ER 803(a)(3). He contends the entire journal shows that R.M. and A.M. each had a motive to fabricate the allegations. We disagree.

To the extent certain entries reflected R.M.'s state of mind, Parker was able to cross examine her about those entries and show them to the jury during closing argument. But Parker makes no showing that any entry in the journal was relevant to A.M.'s state of mind. He points to nothing in the journal suggesting that A.M. had a motive to fabricate the allegations or that her disclosure of sexual molestation was influenced by the journal or by R.M.

Additionally, Parker offered the journal in its entirety. But as the trial court observed, "I don't know if the entire journal is relevant or what information is in it" because "[n]obody has read it word for word . . . ." VRP (8/14/15) at 70. It may be that had Parker offered specific entries from the journal that they may have been admissible as to R.M.'s state of mind. But because he did not, the trial court did not err in refusing to admit the journal in its entirety.[1] There was no abuse of discretion.

---

[1] Parker also argues that the trial court erred when it excluded testimony from A.M.'s brother, Adam, about watching football on Sundays. But the trial court correctly found the testimony irrelevant because it was undisputed that A.M. did not watch football with the family but instead stayed in her room. Thus, that some members of the family watched football on Sunday was of no consequence to whether Parker molested A.M.

No. 74030-0-I/8

Prosecutorial Misconduct

Parker argues that the prosecutor engaged in misconduct during her closing argument.[2] He contends that the prosecutor misstated the law and lessened the State's burden of proof when she summarized the court's reasonable doubt instruction.

In her closing remarks, the prosecutor described the court's reasonable doubt instruction as follows:[3]

> The next instruction that I want to talk about is instruction No. 2, and it tells you what my burden of proof is. All instructions in this packet is important, but this one is particularly important, because in this country, the state, the government, I need to prove a defendant guilty beyond a reasonable doubt. It's more than he probably did it. It's more than I really think he did it, but I'm not quite sure. But it's the highest standard of proof in the law, which is beyond every

---

[2] Parker also argues that the prosecutor committed misconduct in her opening remarks when she described A.M. as "cute as a button." VRP (8/11/15) at 46. He contends the comment represented the prosecutor's personal opinion on A.M.'s credibility and bolstered A.M.'s credibility by implying that Parker was attracted to her appearance. The arguments are without merit. Parker does not explain how the remark reflects an opinion on the credibility of the witness. Nor does he cite to anywhere in the record that the State implied or suggested that A.M.'s appearance was Parker's motive for committing the crimes.

[3] The court's reasonable doubt instruction stated as follows:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers (CP) at 16.

8

reasonable doubt. Now, if you have a doubt, it needs to be based on evidence or lack of evidence per element that I need to prove.

Now, this instruction tell us [sic] you in the first paragraph that the state is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. I point that out because often in a case, and in this one as well, this is no exception, there are proof of facts, a lot of facts, but they may not be facts which need to be proved beyond a reasonable doubt. They may not be entirely relevant to an element, for example.

So, for example, whether or not Shannon [Dearinger] wanted to get out of the marriage might be a fact that you have a reasonable doubt on, but it doesn't matter in terms of evaluating the elements that I need to prove. I need to prove the elements of the charged crimes beyond a reasonable doubt. VRP (8/17/15) at 112-113.

Parker did not object to this argument.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecuting attorney's conduct was both improper and prejudicial. State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006) (citing State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). We determine if the defendant was prejudiced under one of two standards of review. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Id. If the defendant did not object at trial, the issue is waived unless the "prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." Id. at 760-61 (citing State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)). Under this heightened standard, the defendant must show that (1) "'no curative instruction would have obviated any prejudicial effect on the jury'"

9

and (2) the misconduct resulted in prejudice that "'had a substantial likelihood of affecting the jury verdict.'" Id. at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

Parker contends the prosecutor's argument that facts not relevant to a specific element of the crime cannot create a reasonable doubt misstated the law. He contends the argument lessened the State's burden of proof because it withdrew from the jury acceptable bases upon which to formulate a reasonable doubt. He points to the example given by the prosecutor about whether Dearinger wanted to get out of her marriage. He argues that while the issue may not have gone to an element of the charged crime, it may nonetheless have been relevant to her motivation to fabricate allegations against him, and thus whether a crime was committed at all.

The argument fails for two reasons. First, the prosecutor's argument tracks the court's reasonable doubt instruction which states that "[t]he State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt." CP at 16. The prosecutor thus sought to focus the jury's attention on the elements she needed to prove and the evidence that, in her view, supported each element. This was not improper.

Second, because Parker did not object at trial, even if the argument was improper, his claim is waived unless he shows that no curative instruction would have obviated any prejudicial effect on the jury and that there is a substantial likelihood the comment affected the jury's verdict. He fails to do so. Parker makes only a general argument that the comment was prejudicial because it

misstated the State's burden of proof. But he makes no argument about how the comment may have affected the jury's verdict in this case or explain why a proper instruction would not have cured any possible prejudice. We reject Parker's claim of prosecutorial misconduct.

Parker argues in his statement of additional grounds that the prosecutor engaged in misconduct when she mischaracterized testimony, arranged a witness to face away from him, and told the jury they could consider Parker's bias when evaluating his testimony.[4]

Parker contends that the prosecutor characterized A.M.'s statements in the recorded interview as describing penetration even though the verbatim report of proceedings reflects that she said Parker touched "on" her rather than "in" her. In her closing argument, the prosecutor argued that the victim described penetration in the recording. VRP (8/17/15) at 119-20. Right before playing the video, the prosecutor says: "I ask you to pay particular attention about when she's talking about what the defendant does at her hole, does he push on it, in it, or something else." VRP (8/17/15) at 129. When the video stopped, the prosecutor said, "[s]o she's saying he would push down in it and it hurts me." VRP (8/17/15) at 131. Whether A.M. said "in" or "on" was unclear from the recording. VRP (8/13/15) at 82-83. The prosecutor told the jury that it was their decision what exactly A.M. said, then argued that A.M. described penetration. The prosecutor may argue an interpretation of the facts so long as it is based in

---

[4] For clarity, we address the additional claims of prosecutorial misconduct that Parker raises in his statement of additional grounds at this juncture. The remainder of his statement of additional grounds claims are addressed below.

evidence in the record. State v. Kroll, 87 Wn.2d 829, 846, 558 P.2d 173 (1976). Here, the prosecutor's argument was based on the recording of A.M.'s interview which was admitted into evidence. There was no misconduct.

Similarly, Parker complains that the prosecutor mischaracterized a gesture made by A.M. in the recorded interview by saying in closing arguments that A.M. gestured "toward her bottom." VRP (8/17/15) at 128. Again, because the argument was based on the recording, there was no misconduct

Parker next argues that the prosecutor arranged to have R.M. face away from him during her testimony, then argued at closing that showed R.M.'s fear of Parker. The argument is without merit. The record shows that when R.M. began her testimony, she apparently blocked the microphone because she was touching her face. The prosecutor switched the side of the microphone. The record does not show that this caused R.M. to face away from Parker.

Parker also argues that the prosecutor should not have told the jury that it could consider the effect of Parker's liberty interest on his testimony. The jury was instructed that it judges each witness's credibility, and may consider "any personal interest that the witness might have in the outcome or the issues . . . ." CP at 14. It was not misconduct to explain to the jury its obligation to assess the credibility of all witnesses.

We reject Parker's claims that the prosecutor engaged in misconduct.

Cumulative Error

A defendant may be entitled to a new trial when cumulative errors make a trial fundamentally unfair. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668

12

(1984). Parker argues that we should reverse his convictions due to the cumulative effect of alleged errors. Because Parker's challenges fail, he is not entitled to a new trial due to cumulative error.

Legal Financial Obligations

Parker argues that the trial court erred when it found that he had an ability to pay legal financial obligations (LFOs). He further contends that the trial court had authority to waive the deoxyribonucleic (DNA) fee, victim's assessment, and filing fee. The State argues that these are all mandatory fees, so the trial court properly imposed them regardless of the inquiry into Parker's ability to pay.

The court stated that "only the mandatory [LFOs] will be imposed given the length of the sentence." VRP (9/17/15) at 210. The DNA fee and victim's assessment are mandatory fees, and a trial court need not consider a defendant's ability to pay when it imposes them. State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163, review denied, 186 Wn.2d 1015, 380 P.3d 482 (2016). The $200 filing fee imposed under RCW 36.18.020 is also a mandatory fee. State v. Lundy, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Parker urges the panel to abandon Lundy in light of State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015), and hold that the filing fee is discretionary. But Blazina requires an individualized assessment of the ability to pay discretionary costs. It does not change whether a cost is discretionary or mandatory. Under Mathers and Lundy, the trial court imposed only mandatory fees, so it did not err if it failed to make an individualized inquiry into Parker's ability to pay those fees.

Additional Claims in Parker's Statement of Additional Grounds

Parker advances several other arguments in his statement of additional grounds. First, he argues that the trial court erred by not instructing the jury on the hypothesis of innocence. We reject this argument because Washington does not recognize the hypothesis of innocence doctrine. State v. Rangel-Reyes, 119 Wn. App. 494, 499 n.1, 81 P.3d 157 (2003) (citing State v. Zunker, 112 Wn. App. 130, 135, 48 P.3d 344 (2002)).

Second, Parker argues that the police investigation failed to establish that he and A.M. could have watched TV while lying on the couch. We cannot review this claim because it is based on facts or evidence not in the record before us. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). The claim may be properly pursued, if at all, only by means of a personal restraint petition. Id.

Finally, Parker discusses many minor inconsistencies in A.M.'s testimony and argues that the prosecutor had a duty to inform the jury that A.M.'s testimony was unreliable. We defer to the trier of fact on issues of conflicting testimony, witnesses' credibility, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (citing State v. Cord, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)). Here, the jury heard A.M.'s testimony, assessed her credibility, and reached its verdict.

No. 74030-0-I/15

Affirmed.

_Spearman, J._

WE CONCUR:

_Trickey, ACJ_     _Dwyer, J._

15