# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ORION ANTHONY RIEDEL,<br><br>Appellant. | No. 57115-3-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — Orion Riedel appeals his exceptional sentence for second degree assault on the ground that the State failed to present sufficient evidence to support the jury's finding that his victim, Benjamin Starkel, was particularly vulnerable. Starkel was high on hallucinogenic mushrooms when Riedel bit off the tip of Starkel's thumb at the end of a back-and-forth physical altercation. Riedel argues that Starkel's intoxication did not render him particularly vulnerable because Starkel was still able to physically fight and defend himself to some extent. However, Starkel testified that the drugs impacted his ability to fight by causing disorientation, haziness, sluggishness, and a feeling of being lost. Because the State presented evidence that would allow a rational trier of fact to conclude that Starkel was particularly vulnerable, we affirm Riedel's sentence.

FACTS

Riedel was charged with second degree assault after biting off the tip of Starkel's thumb during a physical altercation. Riedel was also charged with three aggravating circumstances:

excessive injuries, deliberate cruelty, and particularly vulnerable victim. His case was tried before a jury.

The State presented evidence that Starkel asked his friend Riedel for a "micro dose" of hallucinogenic mushrooms. 2 Verbatim Rep. of Proc. (VRP) at 488. Riedel gave Starkel a mushroom stem and cap to eat, a dose that Starkel did not expect would induce hallucinations. After Starkel ingested the mushrooms, Riedel told Starkel that "it was a very strong mushroom" that would make him feel high. *Id.* at 493. Starkel felt "very high" within ten minutes, faster than he'd ever experienced before, and began to experience distortions to his perception of reality. *Id.* Riedel did not take any mushrooms.

The friends continued to socialize and Starkel drank three or four beers. The friends also took multiple shots of vodka. Starkel continued to hallucinate, perceiving flashing lights, trails, and movement that was not there. Another friend found Starkel's speech to be "incoherent" and noticed that his eyes were dilated and that he was stumbling. 1 VRP at 354. His hallucinations then decreased from "a ten to maybe like[ ] a seven or six." 2 VRP at 511.

After Riedel made several escalating verbal threats, a fight broke out between Riedel and Starkel. Starkel threw the first blow. The two engaged in a back-and-forth physical fight until Riedel pinned Starkel to the ground and punched him in the stomach several times. At this point, Starkel was unable to breathe and reached toward Riedel's face to push or scratch him away. Riedel then grabbed Starkel's hand, placed Starkel's left thumb in between his teeth, and bit down.

Starkel testified that at the time Riedel bit off the tip of his thumb, he was in a "haze" and felt "real sluggish." *Id.* at 520-21. Starkel also testified, "I couldn't really understand where I was in my positioning. I just felt lost." *Id.* at 521. He testified that he "[a]bsolutely" thought that his

intoxication impacted his ability to fight Riedel. *Id.* Starkel also testified that when Riedel was about to bite his thumb, he pleaded with Riedel to stop, but felt too "paralyzed" to utter more than a couple words. *Id.* at 529.

A jury convicted Riedel and made three special findings: that Riedel inflicted injuries that substantially exceeded what would be considered substantial bodily harm, that Riedel's conduct manifested deliberate cruelty to his victim, and that Riedel knew or should have known that his victim was particularly vulnerable or could not resist the attack.

Riedel received an exceptional sentence of 26 months' confinement. This included six months for the excessive injury aggravator, four months for deliberate cruelty, and two months for victim vulnerability. The court declined to find that it would have imposed the same exceptional sentence based on the first two aggravating factors standing alone, as the State requested. The court explained its view as follows:

> that the vulnerab[ility] of [Starkel] is probably not as a compelling factor -- it was found by the jury, but that one is not as compelling to me. I think the other two factors, the deliberate cruelty and excessive injury in particular, and that to me is the strongest one, is excessive injury in particular warrant each kind of getting their own approach.

*Id.* at 839. In addition to the aggravating factors, the court also reached its sentence based on mitigating factors including Riedel's mental health condition and youthfulness, as well as the fact that Starkel was the first aggressor.

Riedel now appeals from his judgment and sentence, arguing that the State failed to present sufficient evidence that Starkel was a particularly vulnerable victim. He does not challenge the other aggravating factors.

3

## DISCUSSION

### I. PARTICULAR VULNERABILITY

Riedel argues that the State presented insufficient evidence to support the jury's finding of Starkel's particular vulnerability. We disagree.

### A. LEGAL PRINCIPLES

We review a jury's special verdict finding the existence of an aggravating circumstance under the sufficiency of the evidence standard. *State v. Stubbs*, 170 Wn.2d 117, 123, 240 P.3d 143 (2010). Evidence is sufficient if, taking the evidence in the light most favorable to the State, any rational trier of fact could find that each element was proven beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We accept the State's evidence as true and draw reasonable inferences in the State's favor. *Id.* at 106. We defer to the factfinder for the purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *Id.* We interpret the evidence " 'most strongly against the defendant.' " *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

RCW 9.94A.535(3)(b) provides that a court may impose a sentence above the standard range based on a finding that the defendant "knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance." This requires showing "(1) that the defendant knew or should have known (2) of the victim's *particular* vulnerability and (3) that vulnerability must have been a substantial factor in the commission of the crime." *State v. Suleiman*, 158 Wn.2d 280, 291-92, 143 P.3d 795 (2006).

The victim's particular vulnerability is a question of fact. *Id.* at 292. A victim is particularly vulnerable "if the victim is more vulnerable to the offense than other victims." *State v. Bedker*, 74 Wn. App. 87, 94, 871 P.2d 673 (1994).

A victim's vulnerability can arise from the circumstances of the crime. For example, in *State v. Gordon*, 172 Wn.2d 671, 680, 260 P.3d 884 (2011), the supreme court held that a jury relied on sufficient evidence when it found that an assault victim was particularly vulnerable. It reasoned that the victim was outnumbered, as a solitary victim being attacked by three to five assailants. *Id.* It pointed out that witnesses testified that a solitary victim could not have fought back or defended himself against a group attack. *Id. See also State v. Hicks*, 61 Wn. App. 923, 931, 812 P.2d 893 (1991) (affirming exceptional sentence based on finding that rape victim, though not of advanced age, was particularly vulnerable because she was attacked as she slept and was therefore less capable of resistance compared to other rape victims); *cf. State v. Burkins*, 94 Wn. App. 677, 698, 973 P.2d 15 (1999) (vulnerable victim finding not supported where record showed only that victim used drugs but did not show victim was impaired by them); *State v. Crutchfield*, 53 Wn. App. 916, 923, 771 P.2d 746 (1989) (same).

B. ANALYSIS

At issue here is the second element of the aggravating factor, whether Starkel was particularly vulnerable. Riedel argues that Starkel could not have been particularly vulnerable because the two men engaged in a back-and-forth altercation and that the evidence therefore did not show that Starkel was incapacitated and incapable of self-defense. But this argument misunderstands the case law. A victim need not be completely incapacitated or wholly incapable of self-defense; rather, the victim must be more vulnerable than a typical victim. *See Gordon*, 172

No. 57115-3-II

Wn.2d at 680. The fact that Starkel was able to physically fight back to some extent is not dispositive.

Riedel next argues that Starkel's intoxication did not prevent him from thinking rationally. However, we must view the evidence and draw all reasonable inferences in the light most favorable to the State. *Homan*, 181 Wn.2d at 106. The State presented evidence that Starkel was impacted by the mushrooms both in his physical and mental capacity. Starkel testified that his intoxication impacted his ability to fight and that he felt "sluggish" and was in a "haze." 2 VRP at 520-21. He testified that he "couldn't really understand" his physical positioning and that he "felt lost." *Id.* at 521. And when Riedel had Starkel's thumb in his mouth, Starkel felt too "paralyzed" to utter more than a couple words in protest. *Id.* at 529. Taking this evidence in the light most favorable to the State, the jury could reasonably conclude that Starkel was particularly vulnerable when compared to other victims. Thus, we affirm Riedel's exceptional sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, J.

GLASGOW, C.J.

6