# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49707-7-II |
| Respondent, | |
| v. | |
| JOHN K. L. AYLWARD, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — John K. L. Aylward appeals his multiple convictions and sentence stemming from repetitive sexual abuse of his seven-year-old stepdaughter, D.D. He challenges the validity of the search warrant by which officers obtained evidence of the abuse. He also argues that the trial court erred by finding numerous aggravating factors, imposing a clearly excessive sentence, and forbidding him from contacting his daughter, H.A., for life.

We affirm.

## FACTS

### I. ABUSE

Aylward married D.A. in 2013 after they had been together for four or five years. D.D., born in 2008, was D.A.'s daughter and knew Aylward as her father.

Aylward had sexual intercourse with D.D. multiple times in her bedroom, his bedroom, a family friend's home, Aylward's van and tattoo shop, and a couch in their home. A memory card in Aylward's cell phone also contained numerous sexually explicit depictions of children.

II.    WARRANT

H.A., Aylward's twelve-year-old daughter from a previous marriage, began living with Aylward and D.A in August 2015.  In December 2015, H.A. reported to a school counselor that she had concerns that her father might be sexually molesting D.D.  She told the counselor that Aylward gave D.D. a phone to view pictures and videos of Aylward and D.A. engaged in sexual activity.  H.A. stated she had seen some of the pictures and heard audio of a video D.D. watched.  She also stated that D.D. and Aylward would go into the bedroom when D.A. was not home and no one was allowed to disturb them.

A Pacific County deputy sheriff and Child Protective Services investigator followed up on the counselor's report and interviewed H.A.  She disclosed concerns about her father's methamphetamine use, his assaults against her, and his sexual misconduct.  She expressed concerns about Aylward possibly molesting D.D.  She repeated what she had told the counselor.

H.A. described an incident where she saw D.D. come "out from under the sheets and was sprawled out naked on the bed 'like a starfish.'"  Clerk's Papers (CP) at 47.  She said that Aylward "was under the sheets too, but she saw half his body exposed and said he too was naked."  CP at 47

Based on H.A.'s disclosures, Deputy Kendall Biggs applied for a search warrant of Aylward's home and person.  A judge issued the warrant, directing officers to search Aylward's home and person, and to seize:

> Video or photographs stored on media devices, to include but not limited to cell phones, cameras, thumb drives, desktop computers, laptop computers, video cameras, printed photos, DVD's, CD's, VHS tapes suspected or known to contain sexually explicit material of adults or minors, glass . . . suspected to be used to smoke methamphetamine, methamphetamine or other white powdery substances suspected of being illegal drugs.

CP at 42.

2

Before executing the warrant, Biggs ran a criminal history check on Aylward and learned that he had a felony conviction and could not legally possess firearms.

Deputies searched Aylward's residence. They located and seized several firearms in his work room. Officers also seized a white cell phone and a blue memory card. 11RP at 399, 404. An officer described the files on the phone's memory card:

> I observed everything on that card was pornography material. I would classify as extremely pornographic. Thousands upon thousands of files. I observed maybe 70 files. Took me about an hour. I would say a quarter of the files I observed were child pornography, ranging anywhere from ages toddler, two, three years old, up through eight, nine range. Young teenager up to older teenager to where maybe it would be questionable, you know, seventeen, eighteen, nineteen. But some right in that age.

Report of Proceedings (RP) (Sept. 19, 2016, 10:51 A.M.) at 405-06. The blue memory card contained video files of Aylward having sexual intercourse with D.D.

III.    PRETRIAL AND TRIAL

The State charged Aylward with six counts of rape of a child in the first degree, six counts of incest in the first degree, three counts of sexual exploitation of a minor, one count of dealing in depictions of minors engaged in sexually explicit content, one count of possession of depictions of minors engaged in sexually explicit conduct in the first degree, and one count of unlawful possession of a firearm in the second degree.

It alleged the following additional aggravating factors for each rape of a child, incest, and sexual exploitation of a minor count: (1) Aylward knew or should have known that the victim was particularly vulnerable or incapable of resistance; (2) Aylward used his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the offense; (3) the offense involved an invasion of the victim's privacy; (4) the offense involved domestic violence and was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple

3

victims manifested by multiple incidents over a prolonged period of time; and (5) the Aylward committed multiple current offenses and his high offender score resulted in some offenses going unpunished.[1]

Before trial, Aylward moved to suppress all evidence seized from the search of his home. He argued that the search warrant was unconstitutionally overbroad. He primarily relied on *State v. Besola*, 184 Wn.2d 605, 359 P.3d 799 (2015). The court denied the motion and upheld the validity of the warrant.

Aylward waived his right to a jury and the court proceeded with a bench trial. The trial court admitted three videos of Aylward molesting D.D., testimony from H.A., D.D., and D.A. about the abuse, and numerous other witnesses to whom D.D. disclosed the abuse. The court found Aylward guilty on all counts and issued written findings of fact and conclusions of law.

The court found that all of the charged aggravating factors applied and sentenced Aylward to a minimum of 1,200 months and a maximum sentence of life on each rape of a child count.[2] It sentenced him to 60 months on the weapon possession count and 120 months on each other count, all to be served concurrently with the rape of a child sentences. It additionally ordered that he have no contact with D.D. or H.A. for life. At the sentencing hearing, the trial court stated:

> [T]he Court's intent is that based upon even one of these crimes that you have been found guilty of of 1 through 6 . . . that one of those aggravators—excuse me—that if somehow the Court of Appeals finds that this Court erred in some way, either at trial or what I said in sentencing, your crimes were so horrendous that this Court would give the same sentence even if there was only one aggravator on each of those counts.

RP (Oct. 7, 2016) at 630. Aylward appeals.

---

[1] RCW 9.94A.535(3)(b), (n), (p), (h)(i), (2)(b).

[2] The trial court calculated the standard range on these counts as 240 to 318 months based on Aylward's offender score of 50 and the crime's seriousness level of XII. RCW 9.94A.510.

ANALYSIS

I.    VALIDITY OF SEARCH WARRANT

Aylward contends that the search warrant in this case violated the Fourth Amendment to the United States Constitution because it failed to describe with particularity the materials to be searched and seized. He argues that the warrant permitted seizure of material that was legal to possess and that it provided an unconstitutional level of discretion to searching officers. He further contends that, because the warrant sought material subject to First Amendment protection, it was subject to a heightened standard of particularity that it could not meet.[3] We disagree.

A.    LEGAL PRINCIPLES

"The Fourth Amendment requires that search warrants 'particularly decrib[e] the place to be searched, and the persons or things to be seized.'" *Besola*, 184 Wn.2d at 610 (quoting U.S. CONST. amend. IV). "The purposes of the search warrant particularity requirement are the prevention of general searches, prevention of the seizure of objects on the mistaken assumption that they fall within the issuing magistrate's authorization, and prevention of the issuance of warrants on loose, vague, or doubtful bases of fact." *State v. Perrone*, 119 Wn.2d 538, 545, 834

---

[3] Aylward contends that details from the search warrant affidavit do not increase the warrant's particularity because the affidavit was not attached to the warrant. Br. of Appellant at 25. Generally, "the executing officer's personal knowledge of the place to be searched may 'cure' minor, technical defects in the warrant's place description." *State v. Riley*, 121 Wn.2d 22, 28, 846 P.2d 1365 (1993). However, "where the inadequacy arises not in the warrant's description of the place to be searched but rather in the things to be seized, the officer's personal knowledge of the crime may not cure the defect" because the warrant's purpose is to both limit the executing officer's discretion and inform the persons subject to search what items the officer may seize. *Riley*, 121 Wn.2d at 29. Additionally, "[i]f the affidavit is not attached to the warrant and expressly incorporated therein, it may not cure generalities in the warrant even if some of the executing officers have copies of the affidavit." *Riley*, 121 Wn.2d at 29. We therefore consider the warrant itself and look to the affidavit only insofar as it provides probable cause for issuance of the warrant.

5

P.2d 611 (1992). We review whether a search warrant contains a sufficiently particularized description de novo. *Perrone*, 119 Wn.2d at 549.

"Warrants 'must enable the searcher to reasonably ascertain and identify the [items] which are authorized to be seized.'" *Besola*, 184 Wn.2d at 610 (internal quotation marks omitted) (quoting *Perrone*, 119 Wn.2d at 546). The warrant must limit the discretion of the executing officer to determine what items to seize. *Besola*, 184 Wn.2d at 610. Additionally, "the search of computers or other electronic storage devices gives rise to heightened particularity concerns." *State v. Keodara*, 191 Wn. App. 305, 314, 364 P.3d 777 (2015), *review denied*, 185 Wn.2d 1028 (2016).

"Warrants for materials protected by the First Amendment require a heightened degree of particularity. In such cases, the particularity requirement must be 'accorded the most scrupulous exactitude.'" *Besola*, 184 Wn.2d at 611 (internal quotation marks omitted) (internal citation omitted) (quoting *Perrone*, 119 Wn.2d at 548). The "scrupulous exactitude" requirement comes from *Stanford v. Texas*. 379 U.S. 476, 85 S. Ct. 506, 13 L. Ed. 2d 431 (1965). Per *Stanford*, the particularity requirement "is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." 379 U.S. at 485. First Amendment protected material triggers this heightened standard only when the basis for its seizure is the *ideas* within that material.

B.      PARTICULARITY OF ITEMS TO BE SEARCHED AND SEIZED

In *Perrone*, the defendant was under investigation for dealing in and possession of child pornography. 119 Wn.2d at 542. A search warrant issued for seizure of child or adult pornography as well as drawings of children or adults engaged in sexual activity from the defendant's residence. *Perrone*, 119 Wn.2d at 543. The State conceded that probable cause did not exist to seize adult

6

pornography, pornographic drawings, and sexual paraphernalia. *Perrone*, 119 Wn.2d at 551. The court also ruled that the description "child pornography" left too much discretion to searching officers and was not sufficiently particularized. *Perrone*, 119 Wn.2d at 553-55.

*Besola* also addressed an overbroad search warrant in a child pornography investigation. 184 Wn.2d at 607. In *Besola*, officers found CDs and DVDs with labels indicating they contained child pornography. 184 Wn.2d at 608. They requested and received a warrant authorizing seizure of:

> 1. Any and all video tapes, CDs, DVDs, or any other visual and or audio recordings;
>
> 2. Any and all printed pornographic materials;
>
> 3. Any photographs, but particularly of minors;
>
> 4. Any and all computer hard drives or laptop computers and any memory storage devices;
>
> 5. Any and all documents demonstrating purchase, sale or transfer of pornographic material.

*Besola*, 184 Wn.2d at 608-09. As in *Perrone*, the warrant sought First Amendment-protected material that was legal to own. *Besola*, 184 Wn.2d at 613. The court concluded that the warrant was thus overbroad, because "the descriptions of the items to be seized expressly included materials that were legal to possess, such as adult pornography and photographs that did not depict children engaged in sexually explicit conduct." *Besola*, 184 Wn.2d at 613. The court emphasized that the descriptions could be made more particular by simply using the precise statutory language: "'depictions of a minor engaged in sexually explicit conduct.'" *Besola*, 184 Wn.2d at 613 (quoting RCW 9.68A.050).

In this case, the warrant authorized officers to search Aylward's residence as well as his and D.A.'s persons. It allowed them to seize "video or photographs stored on media devices to

include but not limited to cell phones, cameras, thumb drives, desktop computers, laptop computers, video cameras, printed photos, DVDs, CDs, VHS tapes, suspected or known to contain sexually explicit material of adults or minors," as well as drugs and drug paraphernalia. CP at 42.

The warrant in this case is not as broad as that found unconstitutional in *Besola*. Whereas the *Besola* warrant allowed for seizure of "[a]ny and all video tapes, CDs, DVDs, or any other visual and or audio recordings," as well as "[a]ny photographs," the warrant in this case limited its scope to videos or photographs "suspected or known to contain sexually explicit material of adults or minors." 184 Wn.2d at 608; CP at 42. However, as in *Besola*, the warrant did authorize officers to seize material that was "legal to possess" and protected by the First Amendment: adult pornography.

*Perrone* and *Besola* both involved only child pornography charges; the state did not allege rape or sexual abuse. 119 Wn.2d at 542; 184 Wn.2d at 609. The warrants in those cases had to meet the "scrupulous exactitude" requirement, as the basis for seizure of the pornographic material was "the ideas which they contain[ed]." *Stanford*, 379 U.S. at 485.

In this case, however, Biggs's affidavit for the search warrant included information from H.A. that D.D. was "allowed to view photos from [Aylward's] phone that are pornographic of [Aylward] and [D.A], including video of the two likely having sex." CP at 47. The affidavit also included H.A.'s concerns that Aylward was sexually abusing D.D., including specific information that Aylward and D.D. were naked under the sheets together and they frequently go into the bedroom together when D.A. is not home and no one is allowed to disturb them.

Unlike *Perrone* and *Besola*, the adult pornography that Aylward was showing to D.D. was not sought for the ideas it contained. Aylward used the material in his abuse of D.D., desensitizing and grooming her. It constituted evidence of a crime independent of its content. It did not need

8

to meet the heightened standard of scrupulous exactitude. The warrant authorized seizure only of items that either were illegal to possess, or that corroborated or were involved in the ongoing sexual abuse of D.D. The search warrant in this case did not violate the particularity requirement. [4]

## II.     AGGRAVATING FACTORS

Aylward contends that the aggravating factors the trial court found in this case do not distinguish his crimes from other cases of first degree rape and incest. He challenges the trial court's findings as to the victim's particular vulnerability, Aylward's abuse of a position of trust, that the crimes invaded the victim's privacy, and a pattern of abuse in a domestic violence case. He does not dispute the finding of multiple unpunished offenses.

### A.     LEGAL PRINCIPLES

RCW 9.94A.535 permits a court to impose a sentence above the standard range if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." A sentence outside the standard range may be reversed if "the reasons supplied by the sentencing court are not supported by the record which was before the judge," if "those reasons do not justify a sentence outside the standard sentence range for that offense," or if "the sentence imposed was clearly excessive or clearly too lenient." RCW 9.94A.585(4).

An appellate court determines the appropriateness of an exceptional sentence by determining whether:

> (1) under a clearly erroneous standard, there is insufficient evidence in the record to support the reasons for imposing an exceptional sentence; (2) under a de novo standard, the reasons supplied by the sentencing court do not justify a departure

---

[4] Aylward also argues that "[e]ven if the initial search warrant to search is upheld, the court erred in holding the firearms were properly seized under the 'open view' doctrine." Br. of Appellant at 29. However, his only argument on this point is that, because the warrant was invalid, officers had no right to be in Aylward's home where they saw the illegal firearms. Because we uphold the validity of the warrant, the seizure of Aylward's firearms did not violate the Fourth Amendment.

from the standard range; or (3) under an abuse of discretion standard, the sentence is clearly excessive or clearly too lenient.

*State v. France*, 176 Wn. App. 463, 469, 308 P.3d 812 (2013).

Factors inherent in the crime "'in the sense that they were necessarily considered by the Legislature [in establishing the standard sentence range for the offense] and do not distinguish the defendant's behavior from that inherent in all crimes of that type'" may not be relied upon to justify an exceptional sentence. *State v. Ferguson*, 142 Wn.2d 631, 647, 15 P.3d 1271 (2001) (quoting *State v. Chadderton*, 119 Wn.2d 390, 396, 832 P.2d 481 (1992)). "An exceptional sentence is not justified by mere reference to the very facts which constituted the elements of the offense proven at trial." *Ferguson*, 142 Wn.2d at 648.

When reviewing the legal adequacy of an aggravating factor, we employ a 2-part analysis: "First, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range. Second, the asserted aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category." *State v. Grewe*, 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991). We "review such a determination using a 'matter of law' standard." *Grewe*, 117 Wn.2d at 215.

We review de novo whether each aggravating factor inhered in Aylward's crimes such that the Legislature considered it in establishing the standard range. *Grewe*, 117 Wn.2d at 215. We review whether the facts support an aggravating factor under a clearly erroneous standard. *France*, 176 Wn. App. at 469. In applying this standard, we "'reverse the trial court's findings only if no substantial evidence supports its conclusion. Substantial evidence has been defined as evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" *Ferguson*, 142 Wn.2d at 647 n.76 (citation omitted) (internal quotation marks omitted) (quoting *State v. Jeannotte*, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997)).

B.   VICTIM'S PARTICULAR VULNERABILITY

Aylward contends that the victim's vulnerability is inherent in the crimes of rape of a child and incest.  Thus, he argues, the legislature factored this characteristic into the standard range punishment for these crimes and it cannot constitute an aggravating factor.  We disagree.

A defendant's sentence may be aggravated beyond the standard range when "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance."  RCW 9.94A.535(3)(b).  For the victim's vulnerability to justify an exceptional sentence, "the State must show (1) that the defendant knew or should have known (2) of the victim's *particular* vulnerability and (3) that vulnerability must have been a substantial factor in the commission of the crime."  *State v. Suleiman*, 158 Wn.2d 280, 291-92, 143 P.3d 795 (2006).

"A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."  RCW 9A.44.073(1).  A person commits incest in the first degree "if he or she engages in sexual intercourse with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood."[5]  RCW 9A.64.020(1)(a).  "Descendant" is defined to include "stepchildren and adopted children under eighteen years of age."  RCW 9A.64.020(3)(a).

---

[5] Aylward argues particular vulnerability due to age is inherent in the crime of incest in addition to rape of a child.  Because he does not elaborate on this argument or argue that incest includes any elements relating to age of the victim, we do not consider it.  *See State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

*State v. Fisher*, 108 Wn.2d 419, 423, 739 P.2d 683 (1987), decided that "the victim's particular vulnerability due to extreme youth" justified an exceptional sentence, even though the crime, indecent liberties, included as an element that the victim be less than 14 years old.[6] The defendant in that case argued essentially the same thing Aylward argues in this case:

> [B]ecause an element of this offense is that the victim must be less than 14 years old, the Legislature has already considered the victim's age in determining the presumptive sentencing range for the offense, and, therefore, the sentencing judge cannot rely on the victim's extreme youth in imposing an exceptional sentence.

*Fisher*, 108 Wn.2d at 423-24. The court ruled that particular vulnerability of the victim due to extreme youth "is not a factor which necessarily would have been considered in setting the presumptive sentencing range." *Fisher*, 108 Wn.2d at 424. It noted that victims of the crime "range widely in age from 0 to 14 years" and that "[t]o prohibit consideration of the age of the victim in a particular case in sentencing would be to assume that all victims of this offense were equally vulnerable regardless of their age." *Fisher*, 108 Wn.2d at 424.

*State v. Quigg*, 72 Wn. App. 828, 841-42, 866 P.2d 655 (1994), applied *Fisher*'s reasoning to a rape of a child case. Quigg was convicted of rape of a child in the first degree. *Quigg*, 72 Wn. App. at 831. The court relied on *Fisher* to conclude that "[i]t is reasonable for the court to conclude that a victim's age renders him or her particularly vulnerable and *incapable of resistance*." *Quigg*, 72 Wn. App. at 842.

In this case, the trial court found that D.D. was a particularly vulnerable victim and that Aylward was aware of this fact, and that her vulnerability was a substantial and compelling reason for Aylward's crimes. It found that Aylward cultivated a physical, sexual relationship with D.D. when she was 3 or 4 years old, normalizing these acts for her. It found that Aylward had made

---

[6] Since *Fisher*, RCW 9A.44.100(1)(b) has been amended to remove the age of the victim as an element. LAWS OF 1988, ch. 145, § 10.

D.D. particularly vulnerable by his own indoctrination of her into his abuse. It also found that D.D. was particularly vulnerable due to her extreme youth, small size in comparison to Aylward, and Aylward's status as D.D.'s father.

Aylward attempts to distinguish *Fisher* and *Quigg* on the grounds that the child victims in those cases were younger than D.D. First, his attempts are factually inaccurate. The child in *Fisher* was five and a half years old: almost exactly the same age D.D. was at the start of the charged period for rape of a child. 108 Wn.2d at 425. The court also found D.D. was particularly vulnerable for numerous reasons other than her age alone. The trial court did not err by concluding that D.D. was a particularly vulnerable victim.

C.    POSITION OF TRUST

Aylward contends that it was clearly erroneous for the trial court to base his exceptional sentence on a finding that he used his position of trust to commit his crimes.

A defendant's sentence may be aggravated beyond the standard range when "[t]he defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." RCW 9.94A.535(3)(n). When analyzing this aggravating factor, "[t]he inquiry is whether the defendant was in a position of trust, and further whether this position of trust was used to facilitate the commission of the offense." *State v. Bedker*, 74 Wn. App. 87, 95, 871 P.2d 673 (1994). "Abuse of position of trust has been expressly extended to apply to sexual offense cases." *Grewe*, 117 Wn.2d at 216.

D.D. knew Aylward as her father and someone she should have been able to trust. Aylward used this position of trust to commit his crimes. The trial court did not err by concluding that Aylward abused a position of trust.

13

D.      INVASION OF PRIVACY

Aylward contends that invasion of the victim's privacy is inherent in the crimes charged and thus cannot be the basis for an aggravating factor in determining his sentence.

The State concedes that this aggravating factor was clearly erroneous as to the three rape of a child and incest counts taking place outside the family home.[7]

RCW 9.94A.535(3)(p) allows for an exceptional sentence above the standard range when the "offense involve[s] an invasion of the victim's privacy."

In *State v. Lough*, the defendant invaded the victim's privacy when he was invited into her home and then drugged and attempted to rape her. 70 Wn. App. 302, 306-07, 335, 853 P.2d 920 (1993). The defendant argued that the rape was not within the victim's zone of privacy because it occurred in her living room, rather than her bedroom. *Lough*, 70 Wn. App. at 336. The court concluded that "[a] victim's sense of violation of her zone of privacy would likely be equal whether she was raped in her bedroom, living room, kitchen or any other portion of her home." *Lough*, 70 Wn. App. at 336. Though the court determined that invasion of privacy is inherent in the crime of burglary, it upheld the aggravating factor as to the defendant's convictions of indecent liberties and attempted rape in the second degree. *Lough*, 70 Wn. App. at 336.

In this case, the trial court found that Aylward "invaded [D.D.'s] body while she was in the most vulnerable and private places possible for a child: her bedroom at her family home, and

---

[7] Where a reviewing court "overturns one or more aggravating factors but is satisfied that the trial court would have imposed the same sentence based upon a factor or factors that are upheld, it may uphold the exceptional sentence rather than remanding for resentencing." *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003). Here, the trial court stated that Aylward's crimes "were so horrendous that this Court would give the same sentence even if there was only one aggravator on each of [the rape of a child] counts." RP (Oct. 7, 2016) at 630. Accordingly, though we reverse the invasion of privacy aggravators as to the counts taking place outside D.D.'s home, we affirm the exceptional sentence.

that of her mother's bedroom." CP at 285. Like in *Lough*, there is no reason to think that invasion of privacy is inherent in the crimes of rape of a child, incest, or sexual exploitation of a minor. The trial court did not err by concluding this aggravating factor applied as to the counts occurring in D.D.'s home.

> E. ONGOING PATTERN OF ABUSE

Aylward contends that, because a pattern of abuse is frequent in child sexual abuse cases, the legislature included punishment for such a pattern in the standard sentence range for such crimes. He argues that the six charged incidents over a two year period in this case do not establish a "pattern" of abuse that distinguishes his case from other child rape cases. He contends that this aggravator cannot be the basis for an exceptional sentence.

RCW 9.94A.535(3)(h)(i) allows for an exceptional sentence when the "current offense involved domestic violence," and "was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time."

Though Aylward provides an extensive list of child rape cases in which defendants were convicted of extensive patterns of abuse toward their victims, he does not offer any substantive argument as to how a pattern of abuse is built into the elements of the crime itself. Nothing in the definition of the crime supports his argument. The relative frequency of these patterns has nothing to do with what the legislature anticipated as the standard sentence range for rape of a child. Indeed, the court upheld findings of a pattern of abuse in several of the cases that Aylward cites and the issue is not discussed in the others. *See, e.g.*, *State v. Overvold*, 64 Wn. App. 440, 444-45, 825 P.2d 729 (1992); *State v. Duvall*, 86 Wn. App. 871, 877, 940 P.2d 671 (1997). The trial court did not err by concluding that this crime included a pattern of abuse.

III.   EXCESSIVE SENTENCE

Aylward contends that the trial court abused its discretion by imposing a clearly excessive sentence.  He argues that, because his sentence is nearly four times the length of the high end of the standard range for his crime, it "shocks the conscience" and must be reversed.  We disagree.

We may reverse an exceptional sentence if we conclude that, "under an abuse of discretion standard, the sentence is clearly excessive." *France*, 176 Wn. App. at 469.  "A 'clearly excessive' sentence is one that is clearly unreasonable, 'i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.'" *State v. Knutz*, 161 Wn. App. 395, 410, 253 P.3d 437 (2011) (internal quotation marks omitted) (quoting *State v. Kolesnik*, 146 Wn. App. 790, 805, 192 P.3d 937 (2008)).  "When a sentencing court bases an exceptional sentence on proper reasons, we rule that sentence excessive only if its length, in light of the record, 'shocks the conscience.'" *Knutz*, 161 Wn. App. at 410-11 (quoting *Kolesnik*, 146 Wn. App. at 805).

The standard sentence range for Aylward's rape of a child conviction was 240-318 months. RCW 9.94A.510.  The trial court sentenced him to 1,200 months on each rape of a child count to run concurrently, or 3.77 times the top of the standard sentence range.  The trial court found that Aylward "cultivated a physical, sexual relationship with D.D. when she was 3 or 4 years old" which "normalized these acts for this child" and "continued throughout her life until she was taken from her home."  CP at 282.  Aylward's exceptional sentence does not "shock the conscience" given the heinous facts of his crimes.

IV.   CONTACT WITH H.A.

Aylward contends that the trial court abused its discretion by forbidding him from having contact with his daughter, H.A., for life.  He also claims that this order was not within the trial court's authority because it was not "crime-related" under the Sentencing Reform Act of 1981

(SRA). In the event we conclude that the no-contact order was permissible, Aylward argues that we should find that its length was an abuse of discretion. We disagree.

The SRA provides that "[a]s a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions." RCW 9.94A.505(9). A "crime-related prohibition" is an "order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

The authority to impose crime-related prohibitions includes the authority to impose no-contact orders regarding witnesses. *State v. Armendariz*, 160 Wn.2d 106, 113, 156 P.3d 201 (2007). "[A] Washington trial court has the discretion to impose a crime-related prohibition up to the statutory maximum for the crime of which the defendant is convicted without resort to aggravating factors of any kind." *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 375, 229 P.3d 686 (2010).

The imposition of crime-related prohibitions is generally reviewed for abuse of discretion. *Armendariz*, 160 Wn.2d at 110. *Rainey* considered the constitutional implications of crime-related prohibitions that affect a fundamental right, such as the right to care, custody, and companionship of one's children. 168 Wn.2d at 374. Although the "extent to which a sentencing condition affects a constitutional right is a legal question subject to strict scrutiny," "imposition of crime-related prohibitions is necessarily fact-specific and . . . the appropriate standard of review remains abuse of discretion." *Rainey*, 168 Wn.2d at 374-75. However, whether the trial court had authority to issue a specific crime-related prohibition, such as a no-contact order, is a matter of statutory interpretation we review de novo. *Armendariz*, 160 Wn.2d at 110. We review whether the trial court had authority to issue a no-contact order with H.A. de novo and, if it did, we review the length of the order for abuse of discretion.

*State v. Warren* upheld a no-contact order between the defendant and his wife when he was convicted of rape of a child and child molestation of his wife's daughter. 165 Wn.2d 17, 34, 195 P.3d 940 (2008). The defendant argued that the no-contact order was not reasonably crime related because his wife was not the victim of the crimes. *Warren*, 165 Wn.2d at 33. Though it acknowledged reluctance to uphold a no contact order to a person who was not a crime victim, the court concluded that "protecting [the wife was] directly related to the crimes in this case." *Warren*, 165 Wn.2d at 33-34. It based its reasoning on the following facts:

> She is the mother of the two child victims of sexual abuse for which Warren was convicted; Warren attempted to induce her not to cooperate in the prosecution of the crime; and [she] testified against Warren resulting in his conviction of the crime. Warren's criminal history includes convictions for murder and for beating [her]. There is nothing in the record to suggest that [she] objects to the no-contact order.

*Warren*, 165 Wn.2d at 34.

*State v. Ancira* overturned a five-year no-contact order between the defendant and his children. 107 Wn. App. 650, 657, 27 P.3d 1246 (2001). In that case, the defendant was convicted of felony violation of a domestic violence no-contact order for violence against his wife. *Ancira*, 107 Wn. App. at 652. The trial court issued the no-contact order on the basis that the children were present for the domestic violence incident and upset by it. *Ancira*, 107 Wn. App. at 653. The court overturned this basis for the no-contact order, concluding that the fundamental right to parent outweighed the government interest in protecting the children from witnessing further domestic violence, given that prohibiting the defendant from contacting his wife only would presumably serve the same purpose. *Ancira*, 107 Wn. App. at 654-55.

*Rainey* considered the legality of an order prohibiting contact between the defendant and his daughter for life. 168 Wn.2d at 373-74. In that case, the defendant was convicted of kidnapping his three-year-old daughter. *Rainey*, 168 Wn.2d at 371. The court observed that a no-contact order with the victim is a crime-related prohibition. *Rainey*, 168 Wn.2d at 376. It also cited *Armendariz* for the proposition that "the maximum operative length of [crime-related] prohibitions is the statutory maximum for the crime, not the standard sentencing range for incarceration." *Rainey*, 168 Wn.2d at 375.

In this case, Aylward's sentence included that he have no contact with H.A. for life. Although H.A. was not the victim of Aylward's crimes, she was responsible for beginning the police investigation that led to his convictions and testified against him at trial. H.A. is similar to the wife from *Warren* in that she was closely related to the victim, testified against the defendant, and nothing in the record indicates she objects to the order. However, unlike in *Warren*, Aylward has no criminal history for crimes against H.A. and nothing indicates that he attempted to influence her cooperation with the prosecution.[8] This case is distinguishable from *Ancira* on the basis that Aylward's crimes were against his daughters and H.A. was intimately involved in the case; the basis for the order is not simply to prevent her from witnessing violence but for her own protection. The trial court had the authority to issue the no-contact order in this case.

As a class A felony, the maximum sentence for rape of a child in the first degree is life. RCW 9A.44.073(2); 9A.20.021(1)(a). Because "the maximum operative length of [crime-related] prohibitions is the statutory maximum for the crime," the trial court did not abuse its discretion by prohibiting Aylward from having contact with H.A. for life. *Rainey*, 168 Wn.2d at 375.

---

[8] The record does suggest that Aylward may have mouthed "I love you" to H.A. while she testified, distressing her, but this does not amount to an attempt to influence her cooperation with the State. RP (Sept. 20, 2016) at 483, 585.

19

49707-7-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for the public record in accordance with RCW 2.06.40, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Maxa, C.J.