IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39470-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAMERON SCOTT OWNBEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Cameron Ownbey was charged with one count of attempted rape in the second degree and three counts of assault in the second degree stemming from an incident in which N.F.[1] alleged that, after she consumed alcohol and went to bed, she

---

[1] To protect the privacy interests of N.F., we use her initials throughout this opinion. Gen. Order of Division III, *In re the Matter of Victims*, (Wash. Ct. App. September 22, 2023),https://www.courts.wa.gov/appellate_trial_courts/ ?fa=atc.genorders_orddisp &ordnumber=2023_3&div=III.

awoke to Mr. Ownbey spooning her while holding a substance to her face. The charges were tried to a jury.

Following trial and a postconviction motion by the defense, Mr. Ownbey was sentenced on one count of assault in the second degree with sexual motivation. Mr. Ownbey appeals, arguing: (1) the trial court misapplied the rape shield statute, (2) the trial court erred in allowing Jessica Johnson to testify as an expert in order to rehabilitate N.F., (3) the special verdicts returned by the jury are not supported by sufficient evidence or are unconstitutionally vague, and (4) the DNA collection fee and Victim Penalty Assessment (VPA) should be struck.

We affirm Mr. Ownbey's conviction and sentence but remand for the limited purpose of striking the VPA and DNA collection fee.

## BACKGROUND

In 2017, N.F. met Mr. Ownbey through a Craigslist ad he posted in which he stated he wanted "to impregnate somebody." Rep. of Proc. (RP) at 482-83.[2] After meeting in person, N.F. decided against a romantic relationship with Mr. Ownbey, but the two remained friends. As their friendship progressed, the two began a business relationship. Mr. Ownbey was involved in "outdoor marketing," and the two would go to

---

[2] Unless otherwise noted, RP refers to the Verbatim Report of Proceedings beginning on July 8, 2020.

"expos and meet different clients." RP at 484-85. In 2019, N.F. accompanied Mr. Ownbey to Las Vegas, Nevada, to attend a gun show.

In 2020, Mr. Ownbey invited N.F. to stay with him in Leavenworth, Washington. Mr. Ownbey sent N.F. a link to their accommodations. The link showed that there were two bedrooms but upon her arrival, N.F. discovered that one of the bedrooms was occupied, and she and Mr. Ownbey would be sharing a room and bed. The first night N.F. and Mr. Ownbey shared a bed was uneventful.

The next morning, N.F. and Mr. Ownbey drank champagne and wine spritzers while discussing business strategies. Although N.F. needed to return to her home in Moscow, Idaho, she felt it would be unsafe to drive. She opted to go to sleep "because [she] was intoxicated" and "to metabolize the alcohol." RP at 496-97. N.F. went to bed alone, attired in pajamas over her bra and underwear. At some point, N.F. awoke and realized she was no longer wearing clothes, and Mr. Ownbey was naked, "spooning [her], from behind," and holding a substance in a small yellow vial to her face that smelled like "paint thinner" or a "strong permanent marker." RP at 498. N.F. panicked and tried to get away, only to have Mr. Ownbey place her in "a choke hold." RP at 507. Once N.F. broke free, she locked herself in the bathroom and called the local sexual assault crisis line. She then called the police. It was later discovered that the substance Mr. Ownbey was holding to N.F.'s face was amyl nitrate, also referred to as "rush." RP at 610, 616.

3

Mr. Ownbey was charged with attempted rape in the second degree and three counts of assault in the second degree. Count 3, assault in the second degree, alleged Mr. Ownbey "did administer to and/or cause to be taken by N.A.F. a poison and a destructive or noxious substance." Clerk's Papers (CP) at 179.

At trial, N.F. testified consistent with the above. N.F. further testified she and Mr. Ownbey never discussed having a sexual relationship, using an aphrodisiac, or starting a dating relationship. N.F. was subject to cross-examination regarding these statements:

> Q. Do you recall telling Detective Grant that, quote, "I'm sure that I've sent him pictures, at one point in time, when I was trying to pursue something." Do you remember saying anything like that?
> A. Yes. I am sure.
> Q. And do you remember telling Detective Grant that you haven't always been appropriate in those conversations?
> A. Inappropriate is different than having sexual conversations. Are you talking about sexting or are you talking about sexual bantering?
> Q. Both.
> A. We've never sexted.
> Q. Just sexual banter?
> A. Yes.
> Q. Okay. Do you remember Detective Grant asking you, "Have you ever talked about any kind of bondage-type stuff, with Mr. Ownbey?" And your response was, "I don't know. I'm really an open person. So, yeah." Do you remember anything like that?
> A. Yes. I remember answering his questions.

RP at 525-26.

N.F. was also cross-examined regarding her memory of the incident:

Q. And you indicated that you were wearing—you said a bra and panties, and pajama bottoms and a sweatshirt?

A. Pajama bottoms and tank top. And, when I went out, I would put a—a sweatshirt on, because it was cold.

Q. So you don't remember removing your clothes, before you went to bed, or during—you were sleeping in bed?

A. I did not remove my clothes.

Q. Are you sure about that?

A. I am sure.

Q. Because you were—strike that. Isn't it true, ma'am, that you don't even remember going to bed?

A. I know it was hard at the—at one moment, to remember. But I do remember getting into bed by myself, at that point.

Q. Do you remember telling Detective Grant—and I'll refer you to Page 6 of 23, of his interview, where you indicate, "I don't remember. I don't remember lying down. I don't remember if he lied down with me, or if he came to bed later. Like, that part, I just don't have a lot of recollection of that."

Do you remember saying that to Mr.—Detective Grant?

A. I do remember saying that to him, after I was in the hospital, and dealing with the affects of what I was drugged with. And my memory did come back.

Q. But you did say that.

A. I did say that, to—

RP at 550-51.

Defense counsel sought to question N.F. about an alleged sexual discussion she and Mr. Ownbey had while in Las Vegas. The defense also wanted to question N.F. about a "sexual encounter with another couple" in Las Vegas. RP at 532. The State objected, citing RCW 9A.44.020. The State argued that defense counsel was attempting to question N.F. about her past sexual behavior with others and that evidence of that nature was inadmissible under the rape shield statute. The State argued that defense

5

counsel could "ask her if she had previously had a discussion with him about—in Las Vegas, about having a sexual relationship. But the details of it is protected." RP at 532. Ultimately, the court allowed "the question of whether or not, during this Vegas trip, [N.F.] discussed having a sexual relationship with Mr. Ownbey. And that's as far as I'm willing to go." RP at 534.

Defense counsel then inquired of N.F.:

> Q. . . . Ms. [F], directing your attention back to your stay at Las Vegas, with Mr. Ownbey. Did you, at that time, down in Las Vegas, ever have a discussion with Mr. Ownbey about having a sexual encounter, that involved Mr. Ownbey?
> A. I don't understand.
> Q. Okay.
> . . . .
> Q. . . . Ms. [F], with my last question in mind, I'd like you to review your response to prior counsel, contained on Page 22, Lines 10 through 18, and Lines 21 through 25.
> . . . .
> A. Okay.
> Q. After reviewing that, I want to repeat my questions. Did you have a discussion with Mr. Ownbey—talk with him—about having a sexual encounter that involved Mr. Ownbey?
> [THE STATE]: Objection. The framing is not the framing the Court ordered.
> THE COURT: Okay. I'm going to overrule the objection. And, if you can, answer the question.
> A. It seems there might have been a discussion that could have the possibility of sexuality in—in nature, but that was not a sexual encounter discussion, if—if that's what you're asking.

RP at 541-43.

6

Brian Capron, a forensic scientist with the Washington State Patrol Toxicology Laboratory, testified regarding the effects of amyl nitrate. Mr. Capron testified that amyl nitrate is "a central nervous system depressant," can "relax the anal sphincter" and "prolong and intensify orgasm[s]." RP at 611, 616-17. He also testified it is "generally used in sexual situations, to enhance sexual pleasure." RP at 611. Mr. Capron stated, "we know that that can be very dangerous. It can be fatal, as well" if too much amyl nitrate was inhaled. RP at 613.

The State also sought the testimony of Jessica Johnson, the executive director of a domestic and sexual violence crisis center in Chelan and Douglas counties known as SAGE.[3] It was anticipated Ms. Johnson would testify as an expert witness on "a victim's recollection of a traumatic event." RP at 565. The State argued the defense had opened the door for Ms. Johnson to testify by questioning N.F.'s memory of the incident. Mr. Ownbey objected to Ms. Johnson testifying as an expert because he did not think it was appropriate to "call an expert to rehabilitate [N.F.]" or that Ms. Johnson "would qualify as a memory expert." RP at 566. The court allowed Ms. Johnson to testify.

Ms. Johnson's testimony was that victims of traumatic events often remember sensory details of what happened and that it may take some time after the traumatic event

---

[3] SAGE stands for Safety, Advocacy, Growth, Empower.

7

for a victim to be able to make rational decisions again. She also testified that victims often have a "fight, flight, or freeze response" to traumatic events. RP at 691.

During cross-examination, defense counsel asked Ms. Johnson, "Do you have any experience in dealing with people who make false reports of domestic violence?" RP at 694. Ms. Johnson responded, "Yes. There are some, but it's very few." RP at 694. On redirect, the State asked Ms. Johnson, absent an objection from the defense, if she recalled "the average rate of false reporting." RP at 694. Ms. Johnson replied, "Less than five percent." RP at 694.

Mr. Ownbey did not testify at trial but his general defense was that N.F. did not accurately remember the events of the day, and that he never attempted to rape or assault her. Instead, his defense was that the events were "consensual." RP at 823.

Two interviews of Mr. Ownbey were admitted into evidence. Exs. 12, 13. During the first interview, when law enforcement personnel arrived on scene in response to N.F.'s call, Mr. Ownbey stated he and N.F. had been doing "rush" together and having "intimate relations" when N.F. "started getting rough." Ex. 12, 01:43-02:28, 06:07-06:09. Mr. Ownbey stated N.F. "was fucking nuts." Ex. 12, 02:15-02:17.

In a second interview with law enforcement, Mr. Ownbey stated, "One hundred percent, everything that we were engaged in was consensual." Ex. 13, 26:42-26:48. Immediately after this statement, he said, "I did not have sex with her." Ex. 13, 26:48-26:50. When asked about the status of his relationship with N.F., Mr. Ownbey described

8

it as a "friendship." Ex. 13, 08:25-08:29. When describing the incident, he said that, "we're in bed, and we're like, we're being intimate together and then she's—all of a sudden she's like 'Stop!' and I'm like 'Okay!'" Ex. 13, 13:01-13:11. Mr. Ownbey said the two were "doing rush together" and that he "had a couple bottles" of it. Ex. 13, 29:27-30:40.

At the conclusion of trial, Mr. Ownbey was acquitted of attempted rape in the second degree (count 1). The jury found Mr. Ownbey guilty of two counts of assault in the second degree (counts 2 and 3), and guilty of the lesser included offense of fourth degree assault (count 4). Count 3 alleged Mr. Ownbey used a noxious substance to commit the assault, that the crime was committed with sexual motivation, and that Mr. Ownbey used "his [ ] position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." CP at 179.

On Mr. Ownbey's motion, the trial court "vacate[d] the convictions in counts 2 + 4" (second degree assault and fourth degree assault, respectively). CP at 244. On count 3, the court sentenced Mr. Ownbey to nine months, the high end of the standard range, plus 24 months for the sexual motivation enhancement, and an additional 27 months as an exceptional sentence for the position of trust aggravator. The VPA and DNA collection fee were also imposed.

Mr. Ownbey timely appeals.

ANALYSIS

WHETHER THE TRIAL COURT MISAPPLIED THE RAPE SHIELD STATUTE

Mr. Ownbey argues that the court misapplied the rape shield statute and excluded relevant, admissible, and highly probative evidence. He argues that his Sixth Amendment rights to confrontation and to present a defense were violated as a result. We disagree.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "The right to confront and cross-examine adverse witnesses is [also] guaranteed by both the federal and state constitutions." *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002) (citing *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)). We review a Sixth Amendment violation claim de novo. *State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009).

Evidence that a defendant seeks to introduce at trial, however, "must be of at least minimal relevance." *Darden*, 145 Wn.2d at 622. A defendant only has a right to present relevant evidence. *State v. Gregory*, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R., Jr.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). "[I]f relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *Darden*, 145 Wn.2d at 622. Our

Supreme Court has noted that, for evidence of high probative value, "no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment and [Wa.] Const. art. 1, § 22." *State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983).

RCW 9A.44.020, Washington's rape shield statute, reads in relevant part:

(1) In order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated.

(2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history; divorce history; general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards; or, unless it is related to the alleged offense, social media account, including any text, image, video, or picture, which depict sexual content, sexual history, nudity or partial nudity, intimate sexual activity, communications about sexual activity, communications about sex, sexual fantasies, and other information that appeals to a prurient interest is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

(3) In any prosecution for the crime of rape, trafficking pursuant to RCW 9A.40.100, or any of the offenses in chapter 9.68A RCW, or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior; divorce history; general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards; or, unless it is related to the alleged offense, social media account, including any text, image, video, or picture, which depict sexual content, sexual history, nudity or partial nudity, intimate sexual activity, communications about sexual activity, communications about sex, sexual fantasies, and other information that appeals to a prurient interest is not admissible if offered to attack the credibility of the victim and is admissible

on the issue of consent, except where prohibited in the underlying criminal offense. . . .

The rape shield statute was created to end the archaic common law rule that "a woman's promiscuity somehow had an effect on her character and ability to relate the truth." *Hudlow*, 99 Wn.2d at 8. In *Hudlow*, our Supreme Court made a distinction between evidence of the general promiscuity of a rape victim and evidence that, if excluded, would deprive a defendant of the ability to testify to their version of events. *Id.* at 16-18.

Further, in *State v. Jones*, the Supreme Court reiterated that the rape shield statute "states unequivocally that evidence of the victim's '*past* sexual behavior' is 'inadmissible to prove the victim's consent.'" 168 Wn.2d 713, 722, 230 P.3d 576 (2010) (emphasis added) (citing RCW 9A.44.020). "The statute was not designed to prevent defendants from testifying as to their version of events but was instead created to erase the misogynistic and antiquated notion that a woman's past sexual behavior somehow affected her credibility." *Id.* at 723 (citing *Hudlow*, 99 Wn.2d at 8-9).

Mr. Ownbey, by his own admission, sought to introduce evidence of his and N.F.'s "interactions *before and leading up to* the night in question." Br. of Appellant at 31 (emphasis added). Specifically, Mr. Ownbey sought to introduce evidence that he and N.F. almost had sex during a trip to Las Vegas and that the two later agreed to "act on their BDSM fantasies." Br. of Appellant at 31. Because this is undisputedly evidence of

12

N.F.'s past "communications about sexual activity, communications about sex, sexual fantasies, and other information that appeals to a prurient interest," it falls squarely into the purview of the rape shield statute. RCW 9A.44.020.

In order for this evidence to be admissible, or conversely, for Mr. Ownbey to show that the court's decision to exclude the evidence violated his constitutional rights, Mr. Ownbey must first demonstrate that it is relevant.

In *Jones*, our Supreme Court noted that the rape shield statute does not state that a victim's "past sexual behavior is never relevant . . . Evidence of past sexual conduct, such as meeting men in bars before consenting to sex or other distinctive sexual patterns, could be relevant if it demonstrates 'enough similarity between the past consensual sexual activity and defendant's claim of consent.'" 168 Wn.2d at 723 (quoting *State v. Geer*, 13 Wn. App. 71, 73-74, 533 P.2d 389 (1975)). In *Hudlow*, the Supreme Court ruled that if such evidence is only minimally relevant, "the evidence may be excluded if the State's interest in applying the rape shield law is compelling in nature." 99 Wn.2d at 16.

Before the trial court, the State argued that Mr. Ownbey "could ask [N.F.] if she had previously had a discussion with him about—in Las Vegas, about having a sexual relationship. But the details of it is protected." RP at 534. The court ultimately "allow[ed] the question of whether or not, during this Vegas trip, [N.F.] discussed having a sexual relationship with Mr. Ownbey." RP at 532. Mr. Ownbey was also permitted to impeach N.F.'s credibility by asking her about sexual conversations she had with

13

Mr. Ownbey in the past. However, Mr. Ownbey was not permitted to ask whether N.F. had a sexual encounter with others while in Las Vegas.

RCW 9A.44.020(2) states that when the "perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense." This provision of the statute is inapplicable here because N.F. and Mr. Ownbey undisputedly did not have a sexual relationship prior to their time in Leavenworth.

Here, Mr. Ownbey seems to argue that his proffered evidence is relevant because it tended to undermine N.F.'s credibility. N.F. testified that there was never any discussion of starting a sexual relationship between she and Mr. Ownbey. However, the evidence Mr. Ownbey sought to introduce, specifically evidence of an alleged sexual encounter with "another couple" in Las Vegas, does not contradict N.F.'s testimony about her discussions with Mr. Ownbey and is therefore inadmissible. RP at 532. Whether N.F. had a sexual encounter with another couple while she and Mr. Ownbey were in Las Vegas is the type of evidence RCW 9A.22.020 mandates is inadmissible as it is evidence of "the victim's past sexual behavior," which is "inadmissible on the issue of credibility." RCW 9A.44.020(2). Further, Mr. Ownbey has not demonstrated that this evidence was relevant for any reason, including to impeach N.F.'s credibility. Whether N.F. had a sexual relationship with another couple while on a trip to Las Vegas is

14

immaterial to her credibility. Because the evidence was not relevant, Mr. Ownbey's constitutional rights were not violated when the court declined to admit it.

As for Mr. Ownbey's argument that he and N.F. "agreed they would act on their BDSM fantasies," this claimed evidence is not in the record, and Mr. Ownbey does not provide a citation for it. Br. of Appellant at 31. Because we cannot ascertain from the record what Mr. Ownbey is referring to, we cannot review any alleged error in not admitting it. *See State v. Mannhalt*, 33 Wn. App. 696, 704, 658 P.2d 15 (1983) ("The portion of the record certified to this court does not contain any of the motions or proceedings relevant to these matters. Therefore, we cannot consider the alleged errors.").

The court did not misapply the rape shield statute, and Mr. Ownbey's constitutional rights were not violated.

### WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING MS. JOHNSON'S TESTIMONY

Mr. Ownbey argues the trial court erred in allowing Ms. Johnson to testify as an expert in order to rehabilitate N.F. Mr. Ownbey contends that the trial court's ruling violated ER 702 because Ms. Johnson was not an expert on brain science, psychology, or psychiatry. The State responds that Ms. Johnson was qualified under ER 702 to testify and that Mr. Ownbey opened the door, allowing Ms. Johnson to testify as to false reporting statistics. We agree with the State.

15

ER 702 provides:

**TESTIMONY BY EXPERTS**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"In the case of scientific testimony, the expert (1) must qualify as an expert, (2) the expert's opinion must be based upon a theory generally accepted in the relevant scientific community, and (3) the testimony must be helpful to the trier of fact." *State v. Cheatam*, 150 Wn.2d 626, 645, 81 P.3d 830 (2003). Whether or not to admit expert testimony under ER 702 is within the trial court's discretion. *Id.*

Mr. Ownbey's first argument is that Ms. Johnson is not an expert under ER 702. Before the trial court, Mr. Ownbey objected to Ms. Johnson testifying as an expert because he did not think it was appropriate to "call an expert to rehabilitate [N.F.]" and because he did not think she "would qualify as a memory expert." RP at 566. The State argued Ms. Johnson should be allowed to testify about N.F.'s "recollection of a traumatic event, from an initial interview, versus two-plus years later" and because Mr. Ownbey had "opened the door" by discussing and calling into question N.F.'s memory of what happened. RP at 565-66.

Ms. Johnson was allowed to testify as an expert with regard to issues of sexual assault and sexual violence. Ms. Johnson testified that she worked for SAGE, the domestic violence and sexual violence crisis center for Douglas and Chelan counties.

16

She testified she has a Bachelor's Degree from Central Washington University and over 600 hours of training in domestic violence, sexual assault, crime victims, child abuse, and neglect. She also stated she had testified as an expert witness on issues related to sexual assault and sexual violence in the past and that she was trained on the impact of a traumatic event on an individual, including their memory.

Mr. Ownbey's first argument, that Ms. Johnson was not qualified as an expert on brain science, psychology, or psychiatry so should not have been allowed to testify, fails. Ms. Johnson had specialized knowledge of how sexual assault victims react, based on her experience and training, when they are assaulted and of how a traumatic event, such as a sexual assault, affects their memory. Ms. Johnson did not need to be an expert on brain science, psychology, or psychiatry to provide this testimony. The court did not err when it allowed her testify under ER 702.

Mr. Ownbey next argues that even if Ms. Johnson was qualified under ER 702, the defense did not open the door for the prosecution to rehabilitate N.F.'s testimony with statistics on false reporting. Specifically, Mr. Ownbey takes issue with Ms. Johnson's testimony, absent an objection from the defense, that less than five percent of victims make false reports.

"A party may assign evidentiary error on appeal only on a specific ground made at trial." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (citing *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985)). We will not consider issues raised for the

17

first time on appeal. RAP 2.5. Mr. Ownbey did not object to Ms. Johnson's testimony on the rate of false reporting. Any alleged error is therefore unpreserved.

Notwithstanding the procedural infirmity, it was Mr. Ownbey who opened the door to the State's question. On cross-examination, defense counsel asked whether Ms. Johnson had experience with people who make false reports, which led to the question by the State on redirect that Mr. Ownbey now complains of.

To the extent Mr. Ownbey argues he did not open the door to allow Ms. Johnson to testify, we disagree. "[C]orroborating testimony intended to rehabilitate a witness is not admissible unless the witness's credibility has been attacked by the opposing party." *State v. Petrich*, 101 Wn.2d 566, 574, 683 P.2d 173 (1984) *abrogated on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). In some cases, the credibility of a witness may inevitably be a central issue. *Id.* at 575. "An attack on the credibility of these witnesses, however slight, may justify corroborating evidence." *Id.*

Here, N.F.'s credibility was a central issue. Mr. Ownbey's defense was that the incident was consensual while N.F. alleged she did not consent. Further, defense counsel challenged N.F.'s memory of the events leading up the incident:

> Q. *So you don't remember* removing your clothes, before you went to bed, or during—you were sleeping in bed?
> A. I did not remove my clothes.
> Q. Are you sure about that?
> A. I am sure.
> Q. Because you were—strike that. *Isn't it true, ma'am, that you don't even remember going to bed?*

A. I know it was hard at the—at one moment, to remember.  But I do remember getting into bed by myself, at that point.

Q. Do you remember telling Detective Grant—and I'll refer you to Page 6 of 23, of his interview, where you indicate, "I don't remember.  I don't remember lying down.  I don't remember if he lied down with me, or if he came to bed later.  Like, that part, I just don't have a lot of recollection of that."

*Do you remember saying that to Mr.—Detective Grant?*

A. I do remember saying that to him, after I was in the hospital, and dealing with the affects of what I was drugged with.  And my memory did come back.

RP at 550-51 (emphasis added).

Because N.F.'s credibility and recollection of the events was an essential issue, and because Mr. Ownbey attacked her memory of the events, the State was entitled to call Ms. Johnson to testify about how a traumatic event might affect a victim's memory in order to rehabilitate N.F.

Ms. Johnson was qualified as an expert under ER 702, and the court did not abuse its discretion in allowing her to testify.

WHETHER THERE IS SUFFICIENT EVIDENCE TO SUPPORT THE SEXUAL MOTIVATION AGGRAVATOR AND POSITION OF TRUST ENHANCEMENT

Mr. Ownbey argues there was insufficient evidence to support the position of trust aggravator.  Therefore, he contends there was insufficient evidence to support an exceptional sentence.  Similarly, Mr. Ownbey asserts there was insufficient evidence to support the sexual motivation enhancement.  We disagree with both arguments.

"A jury's finding by special interrogatory is reviewed under the sufficiency of the evidence standard." *State v. Stubbs*, 170 Wn.2d 117, 123, 240 P.3d 143 (2010). The sufficiency of the evidence is a question of law this court reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In a sufficiency of the evidence challenge, "we review the evidence in the light most favorable to the State" to determine whether any rational trier of fact could have found the aggravating factor beyond a reasonable doubt. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). "A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from it." *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

RCW 9.94A.535(3)(n) states:

Aggravating Circumstances - Considered by a Jury - Imposed by the Court
Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. Such facts should be determined by procedures specified in RCW 9.94A.537.

. . . .

(n) The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense.

When analyzing the position of trust aggravator, "[t]he inquiry is whether the defendant was in a position of trust, and further whether this position of trust was used to facilitate the commission of the offense. Whether the defendant is in a position of trust depends on

20

the length of the relationship with the victim." *State v. Bedker*, 74 Wn. App. 87, 95, 871 P.2d 673 (1994). "A relationship *extending over a longer period of time*, or one within the same household, would indicate a more significant trust relationship, such that the offender's abuse of that relationship would be a more substantial reason for imposing an exceptional sentence." *State v. Grewe*, 117 Wn.2d 211, 219, 813 P.2d 1238 (1991) (citing *State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987) (emphasis added)).

Mr. Ownbey argues that he was not in a position of trust with N.F. because they were both adults. But this is not dispositive. *See State v. Davis*, 47 Wn. App. 91, 734 P.2d 500 (1987) (affirming the exceptional sentence where the defendant, an adult who was painting the victim's house, used his position of trust to gain entry immediately before assaulting the adult victim).

Here, N.F. testified she had known Mr. Ownbey for years, since 2017. Additionally, N.F. testified that she and Mr. Ownbey had taken trips together, gone hiking together, worked together, and communicated often. Given N.F.'s testimony about the duration and nature of her relationship with Mr. Ownbey, a rational trier of fact could have found that Mr. Ownbey occupied a position of trust with N.F.

The jury also could have found that Mr. Ownbey used that position of trust to facilitate the crime. N.F. testified that Mr. Ownbey had sent her a link to the residence that showed it had two bedrooms when he invited her to Leavenworth. However, upon arrival, N.F. discovered that one of the two bedrooms was occupied, and she and

Mr. Ownbey would actually be sharing a room and a bed. She testified that she felt

"safe" and "wasn't concerned" about sharing a bed with Mr. Ownbey when the two went

to bed on the first night. RP at 494.

A rational trier of fact could have found that Mr. Ownbey used his position of trust

to make N.F. feel comfortable enough to share a bed with him and that he subsequently

used that position of trust to assault N.F. the next day. Consequently, there was sufficient

evidence to support the position of trust aggravator.

Mr. Ownbey argues because there was insufficient evidence to support the

position of trust aggravator, there was insufficient evidence to support the exceptional

sentence. Because the aggravator is supported by sufficient evidence, Mr. Ownbey's

exceptional sentence argument fails.

Mr. Ownbey next claims there was insufficient evidence to support the sexual

motivation enhancement.

RCW 9.94A.835 states:

**Special allegation—Sexual motivation—Procedures.**

(1) The prosecuting attorney shall file a special allegation of sexual
motivation in every criminal case, felony, gross misdemeanor, or
misdemeanor, other than sex offenses as defined in RCW 9.94A.030 when
sufficient admissible evidence exists, which, when considered with the
most plausible, reasonably foreseeable defense that could be raised under
the evidence, would justify a finding of sexual motivation by a reasonable
and objective fact finder.
(2) In a criminal case wherein there has been a special allegation the
state shall prove beyond a reasonable doubt that the accused committed the
crime with a sexual motivation. The court shall make a finding of fact of

whether or not a sexual motivation was present at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it finds the defendant guilty, also find a special verdict as to whether or not the defendant committed the crime with a sexual motivation. This finding shall not be applied to sex offenses as defined in RCW 9.94A.030.

(3) The prosecuting attorney shall not withdraw the special allegation of sexual motivation without approval of the court through an order of dismissal of the special allegation. The court shall not dismiss this special allegation unless it finds that such an order is necessary to correct an error in the initial charging decision or unless there are evidentiary problems which make proving the special allegation doubtful.

RCW 9.94A.030(48) defines "sexual motivation" as "one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification."

"The exclusion of sex offenses [in RCW 9.94A.835(2)] makes sense because the purpose of creating the sexual motivation aggravator was to enhance the punishment of an offender who was sexually motivated in committing a crime that did not necessarily include sexual motivation." *State v. Murray*, 190 Wn.2d 727, 734, 416 P.3d 1225 (2018). The State must prove, beyond a reasonable doubt, the defendant committed the crime for the purpose of sexual gratification. *State v. Vars*, 157 Wn. App. 482, 494, 237 P.3d 378 (2010). The State "must do so with evidence of identifiable conduct by the defendant while committing the offense." *Id.*

Here, Mr. Ownbey was convicted in count 3 of assault in the second degree. Count 3 alleged Mr. Ownbey used a "poison and a destructive noxious substance" to commit the assault. CP at 7. The noxious substance being amyl nitrate, also known as "rush." RP at 610, 616. Mr. Capron testified that amyl nitrate can "relax the anal

23

sphincter" and "prolong and intensify orgasm[s]." RP at 616-17. He also testified it is "generally used in sexual situations." RP at 611. N.F. testified that she awoke unclothed with Mr. Ownbey, also naked, spooning her while holding amyl nitrate under her nose. N.F. testified that when she tried to get away, Mr. Ownbey put "his arm, you know, elbow, in—my neck, and I couldn't—I couldn't—it was hard for me to breathe." RP at 508.

Given Mr. Capron and N.F.'s testimony, a reasonable trier of fact could have found that Mr. Ownbey committed the assaults with sexual motivation. A jury could have found that Mr. Ownbey, while laying naked with N.F., sought to use the amyl nitrate to make it easier to sexually assault N.F., and that the crime was therefore committed with sexual motivation.

Sufficient evidence supports the sexual motivation enhancement.

WHETHER THE POSITION OF TRUST AGGRAVATOR AND SEXUAL MOTIVATION ENHANCEMENT ARE UNCONSTITUTIONALLY VAGUE

Mr. Ownbey next argues that even if supported by substantial evidence, the position of trust aggravator and sexual motivation enhancement are unconstitutionally vague. We disagree.

Statutes are presumed to be constitutional, and the party challenging the validity of a statute has the heavy burden of proving it is unconstitutional beyond a reasonable doubt. *State v. Peters*, 17 Wn. App. 2d 522, 538, 486 P.3d 925 (2021). A statute is

unconstitutionally vague, and therefore void for vagueness if it "fails to define the offense with sufficient precision that a person of ordinary intelligence can understand it, or if it does not provide standards sufficiently specific to prevent arbitrary enforcement." *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). The test for a vagueness challenge is "whether a person of reasonable understanding is required to guess at the meaning of the statute." *State v. Duncalf*, 177 Wn.2d 289, 297, 300 P.3d 352 (2013).

In *State v. Baldwin*, our Supreme Court held that sentencing guideline statutes are exempt from a vagueness challenge. 150 Wn.2d 448, 458-59, 78 P.3d 1005 (2003). Mr. Ownbey argues this court should depart from *Baldwin* in light of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In *Blakely*, the Supreme Court held that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 525, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

However, our Supreme Court has not yet overruled *Baldwin*. *See, e.g.*, *Murray*, 190 Wn.2d at 732 n.1 ("[W]e do not reach the broader question of whether aggravators listed in RCW 9.94A.535 are subject to void for vagueness challenges generally.").

Mr. Ownbey argues that, in light of *Blakely*, enhancements and aggravators can be subject to a vagueness challenge. We need not analyze whether *Blakely* overruled

25

*Baldwin* because even if Mr. Ownbey could bring a vagueness challenge to the enhancement and aggravator, it would fail.

Mr. Ownbey argues the "position of trust aggravator is unconstitutionally vague" because it does not define what a position of trust is or explain how someone could use that position to facilitate an offense. Br. of Appellant at 82. Mr. Ownbey's argument is unpersuasive.

As discussed above, there is a two-part test and various factors to be considered when analyzing whether a defendant was in a position of trust with a victim. *Bedker*, 74 Wn. App. at 95; *Grewe*, 117 Wn.2d at 219. If there is a position of trust, the next inquiry is whether it was used to facilitate the crime.

Mr. Ownbey seems to posit that, because "exactly how much of a relationship must exist [to constitute a position of trust] remains undefined," the aggravator is vague. Br. of Appellant at 83. We disagree. Though it is a fact specific inquiry, a defendant is properly on notice that if they use a position of trust to facilitate a crime against a victim, they are subject to a higher penalty. Mr. Ownbey points to no authority that stands for the proposition that the statute must contain every single possible relationship that may give rise to a position of trust in order for it to be constitutional. Mr. Ownbey cannot meet his burden of demonstrating that the aggravator is unconstitutionally vague.

Mr. Ownbey argues that the sexual motivation enhancement is vague because it "does not provide fair notice of the line between permissible pre-coitus foreplay and sexual motivation." Br. of Appellant at 81.

Our Supreme Court has stated, "The sexual motivation statute is directed at the action or conduct of committing a crime because of the defendant's desire for sexual gratification." *State v. Halstien*, 122 Wn.2d 109, 123, 857 P.2d 270 (1993). The court further noted that, "[t]he statute does not punish a defendant for having sexual thoughts, but rather punishes the defendant for *acting* on those thoughts in a criminal manner." *Id.*

RCW 9.94A.835, the definition of "sexual motivation" contained in RCW 9.94A.030(48), and our Supreme Court have made sufficiently clear that crimes committed for a defendant's sexual gratification carry a higher penalty. Mr. Ownbey fails to demonstrate that the enhancement is unconstitutionally vague.

Assuming Mr. Ownbey can bring a vagueness challenge to the aggravator and enhancement, they are not unconstitutionally vague.

VICTIM PENALTY ASSESSMENT AND DNA COLLECTION FEE

Mr. Ownbey requests that we remand his case to have the trial court strike the VPA and DNA fee. The State concedes.

Former RCW 7.68.035(1)(a) (2018) required a VPA be imposed on any individual found guilty of a crime in superior court. In April 2023, the legislature passed Engrossed Substitute H.B. 1169 (H.B. 1169), 68th Leg., Reg. Sess. (Wash. 2023), that amended

27

RCW 7.68.035 to prohibit the imposition of the VPA on indigent defendants. RCW

7.68.035 (as amended); LAWS OF 2023, ch. 449, § 1. H.B. 1169 took effect on July 1,

2023. Amendments to statutes that impose costs upon convictions apply prospectively to

cases pending on appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714

(2018).

Similarly, pursuant to former RCW 43.43.7541 (2018), the trial court was required

to impose a $100 DNA collection fee for every sentence imposed for the crimes specified

in RCW 43.43.754. Effective July 1, 2023, the legislature amended RCW 43.43.7541 by

eliminating language that made imposition of the DNA collection fee mandatory. *See*

LAWS OF 2023, ch. 449, § 4.

Because Mr. Ownbey's case is pending on direct appeal, the amendments apply.

Further, Mr. Ownbey was found to be indigent.[4]

## CONCLUSION

We affirm Mr. Ownbey's conviction and sentence and remand for the limited

purpose of striking the VPA and DNA collection fee.

---

[4] At sentencing, defense counsel stated Mr. Ownbey was indigent. The court stated it "believe[d] he is indigent" but that it wanted a financial declaration. RP at 884. It does not appear a financial declaration was filed. Mr. Ownbey's judgment and sentence states, "The defendant has the ability or likely future ability to pay the LFOs imposed herein. RCW 9.94A.753." CP at 247. It is unclear whether Mr. Ownbey was indigent at sentencing, but he was found indigent for purposes of this appeal.

No. 39470-1-III
*State v. Ownbey*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:


_____
Fearing, J.


_____
Lawrence-Berrey, C.J.